IN RE TIMKEN MERCY MEDICAL CENTER, APPELLEE;
OHIO DEPARTMENT OF HEALTH, APPELLANT.

[Cite as *In re Timken Mercy Medical Ctr.* (1991), 61 Ohio St.3d 81.]

(No. 90–1516—Submitted April 24, 1991—Decided July 3, 1991.)

---

*Lee I. Fisher*, Attorney General, and *Dennis G. Nealon*, for appellant.
*Bricker & Eckler* and *Catherine M. Ballard*, for appellee.

---

ALICE ROBIE RESNICK, J.  This case involves the interpretation of former R.C. 3702.58, which governed appeals to the Certificate of Need Review Board

from decisions of the ODH.[1] The appellant argues that under R.C. 3702.58, the Board may not reverse an ODH ruling on an application for a certificate of need unless it finds that the Director of Health abused his discretion in reaching a decision. According to the appellant, the Board may not reweigh the evidence or reevaluate the facts. Instead, the Board may reverse an ODH decision only if that decision is "clearly unreasonable or unlawful."

On the other hand, the appellee claims that R.C. 3702.58 specifically authorizes the Board to conduct an adjudicatory hearing to determine if the need exists for a proposed project. At that hearing, the Board is not limited to determining whether ODH abused its discretion in ruling on an application but, instead, is required to consider the evidence presented by both parties, reach factual conclusions based on that evidence, and apply the law to those conclusions to decide whether to grant a CON for a proposed project. The appellee argues that both the rules of statutory construction and basic principles of due process support this interpretation of the Board's role.

We find the appellee's argument persuasive and reject the appellant's interpretation of R.C. 3702.58. First, we find that the language of R.C. 3702.58 supports the appellee's argument that the legislature intended the Board to independently weigh the evidence in an appeal brought pursuant to the statute. By its terms, R.C. 3702.58 called for an adjudicatory hearing: "Any affected person shall be entitled to an adjudication hearing before the certificate of need review board on a decision of the director of health to grant, deny, or withdraw a certificate of need * * *. * * * The adjudication hearing shall be * * * conducted by a hearing examiner appointed in accordance with Chapter 119. of the Revised Code." 142 Ohio Laws, Part III, 4015–4016.

An examination of the legal definition of an adjudicatory hearing, as described in reference books, statutes, and case law, suggests that an R.C. 3702.58 hearing is not simply a proceeding to determine if a lower tribunal has committed an error of law but, instead, is a fact-finding enterprise aimed at reaching a decision based on the weight of the evidence. Black's Law Dictionary (6 Ed.1990) 42, defines an "adjudicatory hearing" as "[a] proceeding before an administrative agency in which the rights and duties of

---

1. At the time that the appellee brought its case to the Board, the version of R.C. 3702.58 in effect was the version amended effective June 30, 1987. Am.Sub. H.B. No. 499, Section 1, 142 Ohio Laws, Part III, 3962, 4015. Sections 4 and 5 of the same Act provided for the repeal of R.C. 3702.58 on July 1, 1989. 142 Ohio Laws, Part III, 4059. However, later enactments have postponed the repeal until November 15, 1991. See Section 2 of Am.H.B. No. 24 and Sections 6 and 16 of Am.Sub. H.B. No. 332 of the 118th General Assembly. The current version of R.C. 3702.58 is substantially similar in all relevant respects to the one at issue in this opinion.

particular persons are adjudicated after notice and opportunity to be heard." Similarly, R.C. 119.01, which contains a lexicon of terms relevant to administrative procedure, defines an "adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person * * *." R.C. 119.01(D). Thus, as the tribunal authorized to conduct an adjudicatory hearing, the Board has the power to determine the rights, duties, privileges, and benefits of each applicant for a CON. This does not square with the appellant's claim that the Board may decide only whether ODH abused its discretion in ruling on the CON.

Moreover, R.C. 3702.58 does not simply require an adjudicatory hearing, it describes that hearing in terms which leave no doubt as to the fact-finding role which the legislature envisioned for the Board. The statute states that "[t]he adjudication hearing shall be * * * conducted by a hearing examiner appointed in accordance with Chapter 119. of the Revised Code * * *." Examination of R.C. Chapter 119, and specifically R.C. 119.09, reveals that a hearing examiner is vested with "the same powers and authority in conducting said hearing as granted to the agency [here, the Board]." Accordingly, the hearing examiner has the power, as defined in R.C. 119.09, to require the attendance of witnesses, to order the production of books, records, and papers, to issue subpoenas, to take depositions, and to pass on the admissibility of the evidence. After the hearing, the examiner "shall submit to the agency a written report setting forth findings of fact and conclusions of law and a recommendation of the action to be taken by the agency." It strains the imagination to discern why the legislature would give the hearing examiner these powers if it intended the examiner to determine only whether the lower tribunal abused its discretion.

The appellant, however, contends that there are certain terms used in R.C. 3702.58 which suggest that the legislature intended the Board to function as a typical appellate tribunal. Specifically, the appellant argues that the use of the terms "assignments of error" and "appeal" indicates that the legislature did not intend the Board to conduct a *de novo* proceeding.[2] We find this argument unpersuasive. Although both of these terms are used in appeals to

---

2. The Supreme Court has specifically rejected the isolation and decontextualization of specific terms within a statute as a valid mode of statutory interpretation. Thus, in *United States v. American Trucking Associations, Inc.* (1940), 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1350, the court stated: "To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute * * *."

this court and to the courts of appeal, their usage is not restricted to those contexts. Viewing the term "appeal" in isolation, one cannot conclude more than that there is a prior determination from which one party is seeking review. The use of the term does not, in and of itself, mandate a particular type of review. Thus, the use of the term is not dispositive of the question of the scope of the Board's authority. Similarly, the reference in the statute to "assignments of error" does not mandate a particular level of scrutiny. As the appellee notes in its brief, the requirement that the applicant specify assignments of error advances the goal of judicial economy by saving the Board from reviewing facts and issues which are not in dispute. There is no reason to conclude that the legislature intended anything different or additional through its use of the term.

Thus, we reject the appellant's argument that R.C. 3702.58, by its terms, requires the Board to apply an abuse-of-discretion test to ODH decisions on CON applications. There is no language in the statute which restricts the Board's role in this manner. The statute does not refer to a level of scrutiny or a standard of review. It contains no reference, either direct or oblique, to an "abuse of discretion" test. In addition, the requirements of the statute— that the Board shall conduct an adjudicatory hearing, that a hearing examiner shall preside over the proceeding, that the examiner shall have the power to subpoena witnesses, hear testimony, and require the production of books, papers, and records, and that the examiner shall submit findings of fact and conclusions of law to the Board after the hearing is completed—suggest that the legislature did not intend the Board to function like a typical appellate tribunal. In fact, they suggest that the Board is expected to weigh the evidence and reach a decision as to whether the applicant is entitled to receive a CON. As the Board followed these requirements to the letter in the case at bar, we reject the appellant's argument that the Board exceeded the bounds of its authority as defined by R.C. 3702.58.

The appellant argues that this interpretation of the Board's role renders the work of ODH entirely superfluous. We find the appellant's argument to be without merit. The appellant points out that ODH was specifically charged by the legislature, pursuant to R.C. 3702.53, with administering the CON program. In its brief, the appellant describes its work as follows:

"Towards that end, the ODH conducts a three to four month review of each application it receives for a CON. * * * During this review, the ODH requests and receives an extensive amount of information from the applicant, from consumers and from other providers. Each application is reviewed by a staff consultant, a senior consultant, by the Assistant to the Director for

Planning, and ultimately by the Director who makes the final decision. The complete record prepared by ODH is commonly several hundred pages thick."

Notwithstanding the appellant's protestations, this work is not rendered superfluous by the lower courts' construction of R.C. 3702.58. Regardless of the level of review applied to ODH findings, the agency still retains the authority to reach initial determinations on CON applications. Moreover, ODH's decisions are not ignored by the Board when an application comes before it on review. R.C. 3702.58 specifically states that "[t]he party requesting the hearing shall present its case first and shall have the burden of proof." Accordingly, if the party appealing ODH's decision does not show why that decision was incorrect, the decision stands.[3] Finally, the research compiled by ODH need not be discarded upon appeal to the Board. In fact, at the adjudicatory hearing, ODH is given the opportunity, through the testimony of witnesses and the production of documents, to provide the Board with the facts and factors which led to its conclusion on a particular application. Since the Board must reach its decision based on the evidence presented at the hearing, ODH's findings will necessarily play a part in its decision. Consequently, we reject the appellant's argument that ODH's work is rendered superfluous by the lower courts' construction of R.C. 3702.58.

Finally, we note that the lower courts' interpretation of R.C. 3702.58 is consistent with basic notions of due process. As this court stated in *Union Camp Corp. v. Whitman* (1978), 54 Ohio St.2d 159, 162, 8 O.O.3d 155, 157, 375 N.E.2d 417, 419–420, "[t]he right to a hearing generally is a basic right, and, where it is withheld, that right is clearly and substantially affected. Nor is that right any less affected * * * because of the existence of an adequate appellate remedy at the close of the administrative proceeding." Before reaching a decision on an application, ODH does not conduct an adjudicatory hearing. Its role is limited to carrying out an independent investigation and reaching a decision based on the facts gathered during that investigation. Consequently, prior to its appeal to the Board, an applicant for a CON has no opportunity to formally present evidence or cross-examine hostile witnesses.

If the Board did not conduct an adjudicatory hearing, and, in accordance with the appellant's interpretation, restricted its inquiry to the question of

---

3. As a result of this provision, the proceeding before the Board is not *de novo* in the purest sense of the term. The Board is not free to completely ignore what transpired at ODH. However, the provision in no way detracts from the Board's authority, as delineated in the statute and recognized in this opinion, to weigh the evidence presented to it at the hearing and reach a decision based on that evidence.

whether ODH's decision was clearly unreasonable or unlawful, an applicant for a CON would be severely prejudiced. Not only would the applicant be left with little more than an appellate remedy, in violation of *Union Camp Corp.,* *supra,* but, if the Board could not reevaluate and reweigh the evidence, the applicant might be denied a CON without ever receiving an opportunity to uncover errors in ODH's data, errors which may have led ODH to reach an incorrect result. Thus, we find that the fundamentals of due process require that applicants for a CON receive a full-fledged evidentiary hearing before the Board.

In its brief, ODH goes to great lengths to convince this court that its expertise in health care planning requires that its decisions on CON applications be accorded great deference. While we acknowledge the important role which ODH plays in regulating and controlling the growth of health care facilities, there is nothing in R.C. 3702.58, or in any of the other statutes addressing the certificate of need program, which justifies aggrandizing ODH's authority in the manner which it requests. As noted above, R.C. 3702.58 neither states nor implies that the Board is to apply an abuse-of-discretion standard in reviewing ODH decisions. In fact, the statute unequivocally states that any person affected by an ODH decision on a certificate of need is entitled to an adjudicatory hearing—a proceeding where evidence is presented to a fact-finder who reaches a decision based on the evidence. This provision not only gives the Board the authority to reweigh the evidence, but it ensures that applicants for a CON will not be denied the right to a hearing, a right which is fundamental to our notions of due process. Consequently, we cannot accept the appellant's argument that the Board must restrict its determination to whether there was an abuse of discretion by ODH.

Finally, we note that in its brief, the appellant argues that even if we find that the Board employed the proper level of scrutiny, we should reverse its decision as being in conflict with Ohio Adm.Code 3701–12–24. However, in its memorandum in support of jurisdiction, the appellant did not raise or even allude to this issue. The memorandum was addressed solely to the interpretation of R.C. 3702.58. Consequently, the question of whether the Board's decision was based on a correct reading of Ohio Adm.Code 3701–12–24 is not properly before us and we decline to rule on it.

For the foregoing reasons, the decision of the court of appeals is affirmed.

*Judgment affirmed.*

Moyer, C.J., Sweeney, Holmes, Douglas, Wright and H. Brown, JJ., concur.