In re DEACONESS HOSPITAL.

In re CHRIST HOSPITAL.

In re ST. FRANCIS–ST. GEORGE HOSPITAL.

In re PROVIDENCE HOSPITAL.

In re PROVIDENCE HOSPITAL et al.

[Cite as: *In re Deaconess Hosp.* (1992), 83 Ohio App.3d 1.]

Court of Appeals of Ohio,
Franklin County.

Nos. 91AP–1386, 91AP–1387, 91AP–1388, 91AP–1389, 91AP–
1392, 91AP–1393, 91AP–1394 and 91AP–1395.

Decided Sept. 29, 1992.

*Geoffrey E. Webster,* Columbus, for appellant Susan Moore.

*Bricker & Eckler, Gretchan A. McBeath* and *Scott W. Taebel,* for appellants Deaconess Hospital, Christ Hospital, St. Francis–St. George Hospital, and Providence Hospital.

*Squire, Sanders & Dempsey* and *David J. Young,* for appellant Deaconess Hospital.

*Lee Fisher,* Attorney General, and *Steven P. Dlott,* Assistant Attorney General, for appellant Ohio Department of Health.

*Baker & Hostetler, Richard W. Siehl* and *Colleen M. Shannon,* for *amicus curiae,* Ohio Hospital Association.

DESHLER, Judge.

Appellants, Deaconess Hospital of Cincinnati ("Deaconess"), Providence Hospital ("Providence"), St. Francis–St. George Hospital ("St. Francis"), The Christ Hospital ("TCH") (collectively "appellants") and the Ohio Department of Health ("ODH"), appeal from orders of the Certificate of Need Review Board ("board"), reversing the decisions of ODH to grant separate certificates of need to Deaconess, Providence, St. Francis and TCH.

In April 1990, Deaconess, Providence, St. Francis and TCH all filed applications with ODH, each seeking a certificate of need ("CON") to recategorize twenty medical/surgical beds to hospital skilled nursing beds pursuant to R.C. 3702.51(R)(7)(d) and Ohio Adm.Code 3701–12–233. The four applications were comparatively reviewed by ODH. By letters dated August 27, 1990, the director of ODH granted each of the applicants a CON to recategorize twenty medical/surgical beds to twenty hospital skilled nursing beds.

On September 26, 1990, Susan Moore, appealed from the decisions of ODH granting CONs to the four applicant hospitals. The cases were consolidated into a single evidentiary hearing which commenced on January 22, 1991, and continued intermittently until its conclusion on May 16, 1991.

On September 20, 1991, the hearing examiner submitted his report and recommendation to the board. The hearing examiner recommended that the board reverse the decisions of the director of ODH and that the applications of the four hospitals for the requested CONs be denied.

Appellants filed objections to the hearing examiner's report and recommendation. By order dated October 31, 1991, the board adopted the report and recommendation of the hearing examiner and reversed the decisions of the director of ODH granting CONs to the four applicant hospitals.

Appellants and ODH timely appealed to this court from the order of the board. Susan Moore ("Moore")[1] also filed notices of appeal from the order of the board. On January 21, 1992, the Ohio Hospital Association ("OHA") filed a motion for an order granting leave to file an *amicus curiae* brief and to participate in oral argument in this matter. By journal entry filed January 23, 1992, this court granted the motion of OHA for leave to file a brief, *amicus curiae*, but denied the motion for leave to participate in oral argument.

On appeal, appellants set forth the following assignments of error[2] for review:

"A. The board committed error in exclusively relying upon the hearing examiner's bed need formula calculations in reversing the decisions of ODH.

"B. The hearing examiner concocted an irrational and unreasonable bed need formula in assessing the need for appellant's projects.

"C. The bed need formula relied upon by the board is illegal as an unlawfully promulgated rule.

"D. Ohio Adm.Code 3701–12–233, as interpreted by the board, is inconsistent with R.C. 3702.51(R)(7)(d) and is invalid.

"E. The board's decision denied the appellants their right to a *de novo* hearing."

---

**1.** In addition to the appeals filed in this action by Deaconess, Providence, St. Francis, TCH and ODH, Susan Moore has also filed notices of appeal with this court from the order of the board. Separate case numbers have been assigned to the notices of appeal filed by Moore. In the proceedings before the board, Moore had filed an appeal with the board as an "affected person" opposing the grant of CONs by the director of ODH to the four hospitals. For purposes of clarity, appellant Moore will be referred to as "Moore" throughout this opinion.

**2.** ODH has filed a statement in lieu of brief, concurring with the assignments of error set forth in appellants' (Deaconess, St. Francis, Providence and TCH) brief.

The brief of OHA sets forth two arguments in support of the position of appellants. The arguments of OHA rephrase the assignments of error of appellants in the following manner:

"The Certificate of Need Review Board erred as a matter of law in its application of Rule 3701–12–233[.]

"The Certificate of Need Review Board erred as a matter of law in determining need pursuant to an unpromulgated bed need formula[.]"

Moore raises two assignments of error on appeal:

Assignment of Error No. 1

"The failure of the Public Health Council to timely adopt regulations voids the authority of the Department of Health to grant certificates of need pursuant to O.A.C. Rule 3701–12–233."

Assignment of Error No. 2

"The Certificate of Need Review Board and the hearing examiner erred in not reopening the record to allow the introduction into evidence of the long term care discharge survey interim report issued by the Greater Cincinnati Hospital Council."

The standard of review for this court in examining an appeal from the board is set forth in R.C. 3702.60(E)(3), which states:

"The court shall affirm the Board's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (E)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order."

In August 1989, the Ohio General Assembly, through the enactment of R.C. 3702.51(R)(7)(d), authorized the recategorization of hospital beds to skilled nursing beds. The reorganization of beds, to be carried out under rules adopted by the public health council, is subject to certain requirements under the statute.

More specifically, a hospital seeking a recategorization of beds shall not apply for a CON for more than twenty skilled nursing beds. R.C. 3702.51(R)(7)(d)(i). Beds recategorized pursuant to the statute shall not be covered by a provider agreement under Title XIX of the Social Security Act. R.C. 3702.51(R)(7)(d)(ii). The recategorized beds are not to be reviewed under or counted in any formula developed under public health council rules for the purpose of determining the number of long-term care beds that may be needed in the state of Ohio. R.C. 3702.51(R)(7)(d)(iii). A hospital seeking recategorization of beds pursuant to this statute must certify and demonstrate in its application for a CON that the beds will be dedicated to patients with a length of stay of no more than thirty days; the patient, however, may stay in the bed for more than thirty days if the hospital

can demonstrate that it made a good faith effort to place a patient in an accessible skilled nursing facility, acceptable to the patient, but was unable to do so within the thirty-day period. R.C. 3702.51(R)(7)(d)(iv).

No beds shall be approved under this statute unless the hospital can satisfactorily demonstrate in its application for a CON that it is "routinely unable to place the patients planned for the beds in accessible skilled nursing facilities." R.C. 3702.51(R)(7)(d)(v). In developing rules to implement this statute, the public health council is required to give special attention to the required documentation of the need for these units, including the efforts of the applicant hospital to place patients in skilled nursing facilities. *Id.* The rules promulgated by the public health council shall also give special attention to the appropriate size of these units given the historical pattern of the applicant hospital's difficulty in placing skilled nursing patients. *Id.* Every hospital seeking recategorization of beds is required to participate in a nursing home placement clearinghouse. R.C. 3702.-51(R)(7)(d)(vi). It is further provided that nothing in the statute shall be construed to require a hospital to place a patient in any nursing home if the patient does not want to be placed in the nursing facility. R.C. 3702.-51(R)(7)(d)(vii).

Pursuant to the directive of R.C. 3702.51(R)(7)(d), the public health council promulgated Ohio Adm.Code 3701–12–233. Under the version of the rule at issue in this case,[3] the term "skilled nursing bed" is defined as "a bed in a facility that participates, in its entirety, in the medicare program as a skilled nursing facility or in that portion of a facility that participates as a skilled nursing facility." Ohio Adm.Code 3701–12–233.

Ohio Adm.Code 3701–12–233(D)(1) reiterates the language of R.C. 3702.-51(R)(7)(d)(iv), by providing. that no beds shall be recategorized unless the applicant hospital demonstrates that the beds will be dedicated to patients with a length of stay of no greater than thirty days. Ohio Adm.Code 3701–12–233(D)(2) provides that the director shall not grant a CON for recategorization unless the hospital certifies and demonstrates in its application that the beds:

"Will be used only to care for patients who have been determined no longer to require acute care and who:

---

3. The version of Ohio Adm.Code 3701–12–233 applied by the board hearing examiner in the present case was the version amended effective on August 3, 1990, and which remained in effect on August 27, 1990, the date that the director of ODH granted the four CONs to the appellant hospitals. At the time the four hospitals filed their applications in April 1990, an earlier emergency version of the rule was in effect. The emergency version was effective from February 8, 1990 through May 8, 1990. All references in this opinion to provisions of Ohio Adm.Code 3701–12–233 are to the version effective on August 3, 1990.

"(a) Have been determined to require and to be eligible for skilled nursing facility care under the medicare program; or

"(b) Have not been placed in a licensed nursing home or with another health care provider accessible and acceptable to the patient despite the hospital's good faith efforts to locate such a placement * * * "

Pursuant to Ohio Adm.Code 3701–12–233(E), the director of ODH may grant a CON for reorganization of beds "only if the director determines that the recategorization is needed." Further, in accordance with the directive of R.C. 3702.51(R)(7)(d)(v), Ohio Adm.Code 3701–12–233(E) provides that the director shall not grant a CON unless the applicant hospital is able to "demonstrate satisfactorily in the application that it routinely is unable to place the patients planned for the beds in nursing homes or with other appropriate health care providers such as home health agencies and other hospitals."

Ohio Adm.Code 3701–12–233(F)(1) provides that an applicant hospital shall document the number of patients in the hospital during a period of twelve consecutive weeks in the six months preceding the date of application who have met the following criteria:

"(a) The patient was determined by a government-sanctioned peer review organization [or the hospital's utilization review committee] no longer to require acute care and to require skilled nursing care at least seven days before the patient was discharged. * * *

"(b) The patient requires skilled nursing services or skilled rehabilitation services provided directly by qualified technical or professional health personnel such as registered nurses, licensed practical nurses, physical therapists, occupational therapists and speech pathologists or audiologists;

"(c) The patient requires the services listed in paragraph (F)(1)(b) of this rule daily on an inpatient basis;

"(d) The patient requires three and one half or more hours of skilled nursing or rehabilitative care daily for at least five out of seven days; and

"(e) The patient requires two or more of the following procedures performed daily by qualified technical or professional health personnel: frequent straight catheterizations (more than two per day); gastrostomy tube; total parenteral nutrition (hyperalimentation); ostomy care; peritoneal dialysis; medically necessary isolation; care of an extensive draining decubitus; care of a post-surgical wound that requires frequent inspection and application of sterile dressings; inhalation therapy three or more times per day; percussion or postural drainings two or more times per day; tracheostomy care with suctioning at least twice per eight-hour shift; continuous mechanical ventilation at least twelve hours each day; inpatient physical, occupational or speech therapy at least three times per

week; continuous or frequent intravenous therapy through a peripheral or central line."

Pursuant to Ohio Adm.Code 3701–12–233(H), the director of ODH may grant a CON under this rule "only for the number of beds that the applicant demonstrates are needed at the hospital." Ohio Adm.Code 3701–12–233(H)(1) provides:

"The director shall consider the historical pattern of the hospital's documented difficulty in placing patients who would meet the admission criteria for the proposed skilled nursing beds. This consideration shall include but is not limited to examination of the total number of eligible patients, the length of time before placement with another appropriate health care provider, seasonal and other fluctuations in the number of patients and their length of stay over time, possible changes in the number and length of stay of patients expected to be served by the skilled nursing beds and the potential for referrals of eligible patients from other health care providers."

In accordance with the statutory mandate, Ohio Adm.Code 3701–12–233(H)(3) states that a hospital shall not apply for a CON for more than twenty skilled nursing facility beds. Further, Ohio Adm.Code 3701–12–233(H)(4) provides that the director shall not grant a CON that would result in the hospital having fewer than eight skilled nursing beds.

■ Appellants' first and second assignments of error, and the second argument raised by OHA in support thereof, are interrelated and will be discussed together. Appellants' assignments of error concern the method utilized by the board hearing examiner in determining that the decision of the director of ODH granting CONs to the appellant hospitals was not supported by the evidence. Appellants and OHA both contend that the hearing examiner erroneously devised a "bed need formula" based on the data submitted in the appellants' twelve-week studies, and that the hearing examiner relied solely upon such formula to conclude that the four CONs should be reversed. Appellants further argue that this "bed need formula," as applied by the hearing examiner, is irrational.

Initially, we note that in the present case, the board hearing examiner had the task of reviewing extensive data submitted by the four applicant hospitals. In an effort to interpret this data in accordance with the recently enacted statute and rule at issue, the hearing examiner employed mathematical analysis based upon figures derived from the hospital's survey sheets. More specifically, the hearing examiner used the following analysis in determining whether there existed a need for the proposed skilled nursing beds. The hearing examiner first calculated what he termed the number of "available bed days." For example, in considering a twelve-week survey in which a hospital filed an application for the recategorization of twenty proposed beds, the hearing examiner first multiplied twelve weeks

by seven days, resulting in a total of eighty-four days. The hearing examiner then multiplied eighty-four days by the number of proposed beds—twenty. This calculation resulted in a total of 1,680 "available bed days" within a twenty-bed, hospital-based skilled nursing facility unit during a twelve-week period.

The hearing examiner next added the number of days of delay experienced by patients who were eventually placed in a free-standing skilled nursing facility bed. The total number of "delay days" was then divided by 1680 to arrive at a calculation the hearing examiner determined to be "the percentage of available bed days which would have been used by patients who satisfied appropriate criteria within such a hospital-based unit." Finally, the hearing examiner multiplied the percentage figure by the number of proposed beds which, the hearing examiner concluded, "produced the number of beds which would actually have been needed to provide services to the patients who would have actually used such a unit during the survey period."

Based upon the above analysis, the hearing examiner concluded that "the statistical information presented through the patient discharge surveys provided by each of the Respondent hospitals does not support a showing of need for a minimum of eight beds within any of the applicant hospitals * * *." More specifically, in applying the above analysis to the data contained in the various discharge surveys provided by the applicants, the hearing examiner arrived at the following calculations indicating the maximum number of hospital-based skilled nursing beds needed for each applicant: Providence, 2.2 beds; St. Francis, 3.3 beds; TCH, 4 beds; and Deaconess, 1.87 beds.

Although the hearing examiner utilized mathematical analysis in dealing with the data submitted by the applicant hospitals, we are unpersuaded by the contentions of appellants and OHA that the hearing examiner's method constituted the promulgation of a "bed need formula." However, we agree with appellants and OHA that sole reliance by the hearing examiner upon the statistical data, to the exclusion of other pertinent evidence, was error.

While the record in this matter indicates that the hearing examiner engaged in a thorough review of the applications submitted by the hospitals, much of the relevant criteria regarding the issue of need for recategorization of beds under the rule simply does not lend itself to mathematical analysis. In considering whether to grant a CON to an applicant hospital, Ohio Adm.Code 3701–12–233(E) provides that:

" * * * The director shall consider the availability of existing and potential alternative providers of care in the community to serve the patients who would be served by the proposed beds, the hospital's efforts to use these alternatives and the ability and willingness of the alternative providers to accept the patients."

Further, Ohio Adm.Code 3701–12–233(F)(6)(b) provides that the director of ODH shall take into consideration factors such as patient, family or physician preferences.

In addressing the above criteria, relevant considerations include: whether there are available alternative beds in the area which provide the level of services needed by the patients in the proposed beds; whether area nursing homes or other appropriate health care providers are willing to accept these patients even if beds are available; whether a patient is willing to be placed in a nursing home or other appropriate facility; and whether a patient's physician believes that the patient can be properly cared for by a nursing home or alternative provider.

Thus, for example, even assuming that skilled nursing beds might be available in area nursing homes, if evidence was provided indicating that the nursing homes contacted for placement routinely do not accept patients who require certain procedures due to expense or because the facilities are not properly equipped, such evidence would be relevant in determining the need for hospital-based skilled nursing beds. Appellants point to record evidence, encompassing such issues as potential service limitations of area providers, utilization rates in area nursing homes and the quality of services offered by area nursing homes, which was disregarded by the hearing examiner. The report of the hearing examiner acknowledges that, during the hearing, the parties presented a "veritable mountain of evidence" concerning matters which included "the availability of Medicare certified skilled nursing facility beds within Hamilton County nursing homes" and "the services available from these beds." However, the hearing examiner found such evidence to be "tangential to the determination of need." We agree with appellants' contention that this evidence should have been considered in determining the issue of need. This court has previously held that "[t]he purpose of the CON determination is to serve the public in order to provide necessary facilities for the persons who need the service of the facility seeking the CON * * *." *In re Eaglewood Care Ctr. v. State Certificate of Need Review Bd.* (Mar. 17, 1992), Franklin App. No. 91AP–357, unreported, 1992 WL 55435. The method of analysis employed in the present case and approved by the board does not adequately address the issue of need.

We note that the report of the hearing examiner states that "[i]f the certificates of need granted to the Respondent hospitals * * * are to be upheld, * * * a showing of need for 20 beds in each hospital must be revealed by the information made available to the Director of Health prior to the date of his decision." While the hearing examiner apparently felt that his determination of need was limited solely to a consideration of the special review criteria as it related to the twelve-

week studies, we do not construe the statute and rule at issue so narrowly.[4] By focusing only upon a mathematical analysis of the data contained in the discharge surveys submitted to the director of ODH, to the exclusion of other relevant evidence of need presented at the subsequent board hearing, the hearing examiner and the board denied appellants the type of adjudicatory hearing contemplated by R.C. 3702.58. See *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 572 N.E.2d 673. Accordingly, upon remand the board is required to properly engage in its fact-finding role and to consider the relevant hearing evidence presented by the parties.

■ We further agree with appellants' contention that the hearing examiner, in interpreting the data from the surveys submitted by the appellants, improperly excluded certain patients from consideration in determining the issue of need. In the present case the hearing examiner only considered the delay information regarding patients who were eventually discharged from hospital beds to "Medicare certified nursing facility beds within free-standing nursing homes."

In considering the delay attributed to patients who were placed only in community-based skilled nursing beds, the hearing examiner specifically disregarded data concerning patients discharged to intermediate care facilities, to a patient's home under health care services, to a patient's home under his or her own care and to assisted living units. The hearing examiner also disregarded patients who expired while still residing in the hospital.

Appellants maintain that the evidence at the hearing established that patients in the appellants' delay studies with discharge dispositions other than to skilled nursing home beds still indicated a need for skilled nursing facility beds. Appellants point to the fact that many of the patients in the surveys who were at one time eligible for skilled nursing care but who could not find available skilled nursing beds eventually improved enough so that they could be placed in intermediate care nursing homes, assisted living facilities or in their homes. Appellants further contend that the record indicates that other patients were not placed in nursing homes because their physicians refused to enter discharge orders based upon the physicians' opinions that the patients would not receive adequate care in a community-based skilled nursing facility.

---

4. We note that Ohio Adm.Code 3701–12–233(A) provides that, if an applicant specifies that it intends for its application to be reviewed under this rule, the director shall review such application under this rule "and any other applicable provisions of this chapter" (with the exception of Ohio Adm.Code 3701–12–23, which pertains to long-term care facilities). Thus, the review of a CON application for recategorization of beds would include not only a consideration of the specific review criteria under Ohio Adm.Code 3701–12–233, but also applicable provisions of the general review criteria contained in Ohio Adm.Code 3701–12–20.

In considering patients who have met the admission criteria for the proposed beds under the rule, we disagree with the hearing examiner's conclusion that the only patients to be considered under the discharge data are those patients discharged to Medicare certified beds. The rule does not specify such a requirement.[5] Rather, under the rule the focus is upon whether a patient was determined to require skilled nursing care and was waiting for placement for such care prior to discharge. The particular facts regarding what eventually happened to a patient at the time of his or her discharge do not address whether that patient at some time prior to discharge had a need for skilled nursing care. Thus, we see no distinction under the rule between the need of a patient who requires skilled nursing care, but expires while waiting for placement in a skilled nursing facility, as opposed to a patient who was ultimately successful in finding placement in a skilled nursing facility.

Based upon the foregoing, the order of the board is not in accordance with law. While appellants request this court to reverse the board's order and to grant the requested CONs, we find that the matter should be remanded to the board in order for the board to consider all of the relevant evidence and to properly apply the law. Accordingly, appellants' first assignment of error is sustained and appellants' second assignment of error is sustained to the extent provided above.

The third assignment of error of appellants asserts that the method utilized by the hearing examiner, and relied upon by the board, is illegal as an unlawfully promulgated rule. The thrust of appellants' assignment of error is that the board's adoption of the hearing examiner's "bed need formula" as the determining factor in assessing appellants' applications constitutes adjudicatory rule making, and that the board erroneously ignored all evidence of need adduced at the hearing because of reliance on the formula.

As previously stated, we disagree with appellants' contention that the hearing examiner created his own unpromulgated "bed need formula." However, even assuming that the method employed by the hearing examiner constituted such a formula, we find any alleged error to be nonprejudicial based upon our determination that the board improperly failed to consider relevant hearing evidence.

Accordingly, appellants' third assignment of error is overruled.

The fourth assignment of error of appellants and the first argument of OHA in support of appellants' position will be discussed together. OHA contends that

---

5. Ohio Adm.Code 3701–12–233(F)(6)(a) requires the applicant hospital to document not only the nursing homes but "other appropriate health care providers contacted for placement." Further, Ohio Adm.Code 3701–12–233(F)(6)(c) requires the applicant to document "[t]he actual accepting provider, *if any*." (Emphasis added.)

the board erred as a matter of law in its application of Ohio Adm.Code 3701–12–233. Appellants argue that either the hearing examiner and the board misconstrued Ohio Adm.Code 3701–12–233, or that the rule is in conflict with R.C. 3702.51(R)(7)(d).

Appellants and OHA point to language in the report of the board hearing examiner in which he concluded that the subject rule intends that identical services and needs are to be addressed by hospital-based skilled nursing beds and nursing home-based skilled beds. The hearing examiner stated that:

" * * * [T]he rule presumes that the criteria for placement within either type of bed and the services to be received by a patient in either type of bed are identical. It is this identity of service to be received in either type of bed and the identical nature of the need for these types of services in either kind of bed which underlies the statute and rule which authorize the approval of changing the categorization of hospital-based medical/surgical beds to hospital-based skilled nursing facility beds.

" * * * If the rationale for hospital-based skilled nursing beds were to be the availability of a higher acuity of nursing service, the availability of nursing home-based skilled nursing facility beds would play no role in deciding the need for hospital-based skilled nursing beds, as the two types of beds would not be analogous."

Appellants and OHA contend that the language of R.C. 3702.51(R)(7)(d) clearly evidences a legislative intent that the services to be provided by a hospital-based skilled nursing facility and those provided by a nursing home are distinct. Appellants maintain that the legislature worded the statute to make it plain that a higher level of services is to be provided in recategorized hospital-based skilled nursing beds than that available in nursing home beds.

▮▮▮ Under the statute and rule at issue, the question of whether or not a particular nursing home is able to provide the same services needed in a proposed hospital bed is a factual matter to be determined on a case-by-case basis according to the difficulties experienced by an applicant hospital. Arguably, the evidence in an individual case might show that nursing homes in a subject area cannot provide, or do not offer, the level of services proposed by an individual applicant hospital. Thus, to the extent that the hearing examiner failed to consider hearing evidence concerning whether or not the services needed for the proposed beds were offered in the area nursing home beds, the arguments of appellants and OHA are well taken.

▮▮▮ However, the contention of appellants that Ohio Adm.Code 3701–12–233 is in conflict with R.C. 3702.51(R)(7)(d) is not persuasive. Pursuant to both the statute and the rule, the director of ODH shall not grant a CON unless the

applicant hospital satisfactorily demonstrates in its application that it is routinely unable to place the patients planned for the beds in nursing homes or with other appropriate health care providers. See R.C. 3702.51(R)(7)(d)(v) and Ohio Adm. Code 3701–12–233(E). The language of the statute and the rule does not preclude the possibility that a nursing home could provide the same level of services as the hospital seeking a CON. Again, the issue is whether the evidence as to the difficulties of the applicant hospital in placing patients in area facilities indicates that the level of services needed is not offered or provided by the alternative area providers. However, under the statute and the rule, the director shall not grant a CON in the absence of such evidence indicating an inability to place patients in appropriate alternative facilities. In sum, the contention that the statute and rule at issue are inconsistent is not well taken.

Accordingly, the fourth assignment of error of appellants is sustained to the limited extent provided above.

Appellants' fifth assignment of error asserts that the board's decision denied appellants their right to a *de novo* proceeding before the board. In light of our previous disposition of appellants' first, second and fourth assignments of error, finding that the board failed to consider relevant hearing evidence, appellants have failed to show prejudicial error under their fifth assignment of error. Upon remand, the board is required to give appellants a proper adjudicatory hearing.

Accordingly, appellants' fifth assignment of error is overruled.

■ We next address the two assignments of error raised by Moore. Moore's first assignment of error asserts that the public health council failed to timely adopt its rules, and therefore the authority of ODH to grant CONs pursuant to Ohio Adm.Code 3701–12–233 is void.

The thrust of Moore's argument is that the CONs granted by ODH are invalid because Ohio Adm.Code 3701–12–233 was adopted by the public health council three days after the six-month time period provided under R.C. 3702.51(R)(7)(d). Moore's argument concerns the fact that the effective date of R.C. 3702.-51(R)(7)(d) was August 5, 1989. Pursuant to R.C. 3702.51(R)(7)(d), a reviewable activity includes "[a] recategorization of hospital beds to skilled nursing beds, under rules adopted by the public health council within six months of August 5, 1989 * * *." The effective date of Ohio Adm.Code 3701–12–233 was February 8, 1990. Moore argues that, pursuant to R.C. 3702.51(R)(7)(d), the public health council was required to adopt its rules on or before February 5, 1990. Moore contends that the statutory language is mandatory in nature and that the failure of the public health council to timely promulgate its rules invalidates any action taken by ODH in this matter.

We disagree. In *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, paragraph three of the syllabus, the Ohio Supreme Court held:

"As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure; and, unless the object or purpose of a statutory provision requiring some act to be performed within a specified period of time is discernible from the language employed, the statute is directory and not mandatory."

We find that the purpose of the time requirement contained in the subject statute is for the "convenience or orderly procedure" by which the rules are to be adopted by the public health council. Thus, the provision is directory rather than mandatory. See *id.* Further, nothing in the statute precludes the public health council from acting beyond the effective date of the statute. See *Bauman v. Guckenberger* (1947), 148 Ohio St. 292, 297, 35 O.O. 292, 294, 74 N.E.2d 369, 371 (statute providing the time or manner in which public official shall act is directory unless statute contains words importing that such duties shall not be done any other time).

Moore's first assignment of error is overruled.

 Moore's second assignment of error asserts that the board and the hearing examiner erred in failing to reopen the record to allow the introduction of supplemental evidence. Moore's argument is not well taken.

As previously noted, the hearing in this matter commenced on January 22, 1991, and proceeded until May 16, 1991, the day upon which the hearing concluded and the hearing examiner closed the record of evidence. The record indicates that, on June 28, 1991, Moore filed a motion to open the record and introduce new evidence. Moore's motion sought to introduce a long-term care discharge survey interim report issued by the Greater Cincinnati Hospital Council.

The board hearing examiner issued a post-hearing order, denying Moore's motion to open the record. The order of the hearing examiner noted that the report Moore sought to introduce had apparently been issued on March 13, 1991. The hearing examiner based his decision to deny the motion on the following grounds: Moore had presented no reason why the interim report could not have been presented prior to May 16, 1991; the reliability of the data was suspect, as nothing in the report indicated that any organized body had accepted the report or certified the accuracy of the data; and the introduction of the data, without sufficient need, would require a continuation of the hearing and indefinitely delay the already lengthy proceedings.

Upon review of the record, we find no error by the board in denying Moore's motion to reopen the record and introduce the subject report. Accordingly, Moore's second assignment of error is without merit and is overruled.

Based upon the foregoing, appellants' first assignment of error is sustained, appellants' second and fourth assignments of error are sustained to the extent provided above, appellants' third and fifth assignments of error are overruled, and the first and second assignments of error of Moore are overruled. Accordingly, the decisions of the board are reversed and these causes are remanded to the board for further proceedings in accordance with law and consistent with this opinion.

*Orders reversed*
*and causes remanded.*

TYACK and MARTIN, JJ., concur.

WILLIAM J. MARTIN, J., of the Carroll County Common Pleas Court, sitting by assignment.