**In re WASTE TECHNOLOGIES INDUSTRIES**

[Cite as *In re Waste Technologies Industries* (1998), 132 Ohio App.3d 145.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–220.

Decided Dec. 22, 1998.

*William C. Martin,* for appellants.

*Betty D. Montgomery,* Attorney General, *James O. Payne, Jr.,* and *J. Gregory Smith,* Assistant Attorneys General, for appellee Ohio Environmental Protection Agency; *Betty D. Montgomery,* Attorney General, and *Lauren C. Angell,* Assistant Attorney General, for appellee Hazardous Waste Facility Board.

*Bricker & Eckler, L.L.P., Charles H. Waterman III* and *Frank L. Merrill,* for appellee Waste Technologies Industries.

PEGGY BRYANT, Judge.

Appellants, Save Our County and Ohio Environmental Council, appeal from the February 13, 1998 order of the Hazardous Waste Facility Board ("HWFB") approving the application of Waste Technologies Industries ("WTI") for a hazardous waste facility installation and operation permit modification. HWFB's approval of the modification transferred the hazardous waste permit for the WTI waste incinerator in East Liverpool, Ohio, to Von Roll America, Inc.

On July 21, 1981, four corporations formed the WTI "joint venture" for the purpose of constructing and operating a commercial incinerator. The four original corporate members of WTI were Waste Technologies, Inc., Energy Technology Co., Von Roll America, Inc., and Koppers Environmental Corp. On April 27, 1984, HWFB issued WTI a permit to install and operate a hazardous waste incinerator at 1250 St. Georges Street, East Liverpool, Ohio. The issuance of the permit for that location was approved on appeal. See *West Virginia v. Ohio Hazardous Waste Facility Approval Bd.* (Dec. 3, 1985), Franklin App. No. 84AP–496, unreported, 1985 WL 4158.

WTI's original permit expired "[f]ive years after the approval of the trial burn results * * * ." Pursuant to Ohio Adm.Code 3745–50–51, the Director of Environmental Protection ("director") revised the permit in draft form on August 21, 1991, and reissued that permit in final form on December 18, 1991. The final permit indicated that it was to "remain in effect until such time as [the permit was] * * * renewed, withdrawn, suspended or revoked."

In February 1986, Von Roll (Ohio), Inc. was incorporated as a wholly owned subsidiary of Von Roll America, Inc. Later in 1986, Von Roll America, Inc. transferred its partnership interest in the WTI partnership to Von Roll (Ohio),

Inc., completely eliminating Von Roll America, Inc. as a WTI partner. By 1986, Waste Technologies, Inc. transferred its interest in the WTI partnership to WTI Acquisition, Inc., which later changed its name to Waste Technologies Incorporated. As with the Von Roll America, Inc. transfer, the Waste Technologies Incorporated transfer completely eliminated Waste Technologies, Inc. as a WTI partner and replaced that entity with Waste Technologies Incorporated.

Through a series of stock purchases, by 1990, Koppers Environmental Corp. evolved into Environmental Elements Ohio (Inc.). Moreover, through a series of transactions in 1990, Von Roll America, Inc. purchased the stock of Energy Technology Co., Waste Technologies Incorporated, and Environmental Elements Ohio (Inc.), thereby acquiring complete ownership of all four corporate partners in the WTI partnership. The directors, president, secretary, and one vice president of Von Roll America, Inc. also serve in those respective capacities for each of the four WTI partnership corporate partners. Von Roll (Ohio), Inc. conducts the day-to-day operations of the incinerator, and Waste Technologies Incorporated manages the facility and oversees environmental regulation compliance.

Pursuant to R.C. 3734.42(E), the Ohio Attorney General required WTI to file a disclosure statement about the waste incinerator facility. WTI complied through a series of disclosures culminating in 1993. Based upon WTI's submissions, the Environmental Background Investigation Unit of the Ohio Attorney General's Office prepared an investigative report ("report") and transmitted it to the director, pursuant to R.C. 3734.42(E)(4). The report addressed several regulatory issues, including the facility's owner and operator in relation to the hazardous waste facility installation and operation permit. The report concluded that the 1986 transfers of WTI partnership interests from Von Roll America, Inc. and Waste Technologies, Inc. to Von Roll (Ohio), Inc. and Waste Technologies Incorporated, respectively, effectuated a modification or revision under R.C. 3734.05(D)(6). Similarly, the report concluded that Von Roll America, Inc.'s 1990 acquisitions of the three non-Von Roll partners "may have resulted in a modification of the facility operations without an accompanying modification of the permit."

On receiving the report, the director asked WTI to submit a permit change request adding Von Roll America, Inc. as an owner and operator on the WTI permit. WTI complied with the director's request by submitting a July 16, 1993 permit change request, seeking redesignation of "Von Roll America, Inc. d/b/a Waste Technologies Industries" as the sole owner of the WTI facility. The director determined that WTI's July 16, 1993 request constituted a modification of the original permit, and, pursuant to R.C. 3734.05(I)(3) and 3734.05(D)(3), transmitted the application to HWFB for an adjudication hearing. The director

also informed HWFB that the staff of the Ohio Environmental Protection Agency ("OEPA") had reviewed the WTI application and determined it was complete and appeared to comply with agency rules and performance standards set forth in R.C. 3734.12(D), (I), and (J).

Pursuant to R.C. 3734.05(D)(4), WTI and the staff of the OEPA were the initial parties to the HWFB adjudication hearing. The hearing examiner for HWFB admitted appellants as intervenors under R.C. 3734.05(D)(4)(d). The hearing officer narrowed the issues subject to review through two rulings: (1) a May 9, 1995 ruling on Save Our County's "specification of disputed issues" and WTI's motion to strike, and (2) an October 23, 1996 ruling on WTI's motion *in limine* seeking to preclude testimony by several of appellants' proposed witnesses. Ultimately, the hearing examiner recommended approval of the permit modification, and HWFB adopted that recommendation in its final order. Appellants appealed, assigning the following errors:

"First Assignment of Error:

"The hazardous waste facility board erred when it declined to consider its own subject–matter jurisdiction.

"Second Assignment of Error:

"The hazardous waste facility board erred when it declined to authorize charles waterman to be called as a witness, and then ignored evidence of Von Roll's 1990 fraud.

"Third Assignment of Error:

"The hazardous waste facility board erred when it declined to consider evidence concerning the applicant's insufficient reliability, expertise, and competency to operate a hazardous waste facility."

Appellants contend in their first assignment of error that HWFB lacked subject-matter jurisdiction over the permit modification proceeding. The appellate standard of review on that assignment of error is set forth by R.C. 3734.05(D)(7), which provides that this court "shall affirm the [HWFB] order complained of * * * if it finds * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."

Contrary to appellants' contentions, HWFB had subject-matter jurisdiction to consider WTI's permit modification application. R.C. 3734.05(D)(2)(b) authorizes HWFB to "approve or disapprove applications for a hazardous waste facility installation and operation permit." Although WTI applied for a permit modification, rather than an application for a new permit, R.C. 3734.05(I)(4)(a) directs HWFB to consider permit modification applications in accordance with R.C. 3734.05(D). See, also, R.C. 3734.05(I)(1) and 3734.05(D)(6).

Appellants' first assignment of error nonetheless alleges that because WTI was not the "permitee," it could not seek modification. As relevant here, R.C. 3734.05(I)(2) provided:

"Except as provided in section 3734.123 of the Revised Code, a hazardous waste facility installation and operation permit may be modified or revised at the request of the director or upon written request of the permitee only if any of the following applies:

" * * *

"(d) The permittee proposes to transfer the permit to another person." 145 Ohio Laws, Part IV, 6659, 6711, 6727.

Similarly, Ohio Adm.Code 3745–50–52, regarding transfer of a hazardous waste facility permit, states that a "permit may be transferred by the permittee to a new owner or operator only if the permit has been modified or revised under rule 3745–50–51 of the Administrative Code to identify the new permittee and incorporate such other requirements as may be appropriate." Because the statute and the corresponding administrative code sections require that a permit may only be modified at the request of "the permittee," appellants' contentions raise a salient issue.

Under the statutory framework, anyone "who proposes to establish or operate" a hazardous waste facility must submit to the director an application for a new or modified permit in accordance with R.C. 3734.05(D) or (I). See R.C. 3734.05(C). The director then is required to transmit a completed permit modification request to HWFB for public and adjudication hearings if the staff of the OEPA makes a preliminary determination that the application appears to comply with agency rules and statutory performance standards. R.C. 3734.05(D)(3) and (I)(4)(c). The statute contemplates that HWFB, as the entity vested with the authority to approve or disapprove permit applications, ultimately must determine in a modification proceeding that the applicant is the permittee, as required by R.C. 3734.05(I). If HWFB finds that an applicant for permit modification is not the permittee, HWFB is then constrained by the clear language of the statute to disapprove the modification request.

█ Preliminarily, and contrary to appellees' contentions, the statute does not grant the director discretion to finally determine that issue, as R.C. 3734.05(D)(3)(c) directs HWFB to "hear and decide all disputed issues" in an adjudication hearing. As the tribunal authorized to conduct an adjudication hearing on an applicant's request for a permit modification, HWFB, not the director, has the ultimate power to assess the applicant's right to receive the modification. Cf. *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 84, 572 N.E.2d 673, 675 (discussing nature of an adjudication hearing).

■ Given the statutory requirements, appellants argue that HWFB could not grant the request for modification because the 1986 and 1990 transfers of WTI partnership interests, without corresponding permit modification proceedings, negated WTI's continuing status as the permittee. Undermining appellants' contentions is the nature of the permit originally issued to WTI. WTI's 1984 permit expired five years after the approval of the trial burn results. A subsequent revised permit was issued to WTI in draft form on August 21, 1991, and the revised permit was issued to WTI in final form on December 18, 1991. By the time the 1991 final permit was issued, all of the changes in WTI's composition were completed. The final, revised permit was issued to the same WTI partnership that applied for the permit modification at issue. Accordingly, WTI was the permittee and could legitimately effect a permit modification proceeding under R.C. 3734.05(I)(2) and the corresponding administrative code provisions. While HWFB properly considered WTI the permittee, the modification was nonetheless necessary to address compliance with the citing criteria raised by the 1993 report.

Appellants' first assignment of error is overruled.

Appellants' second assignment of error asserts that the hearing examiner improperly excluded Charles H. Waterman III, co-counsel for the applicant, as a witness.

Appellants communicated in their October 4, 1996 "Intervenor's Discovery Response" that they proposed to call Waterman as a lay witness in relation to "communications with OEPA [regarding the East Liverpool] incinerator ownership issues." The hearing examiner ruled that appellants could not call Waterman as a witness because the proposed testimony "could clearly come from other sources," and because of "other numerous legal issues involved regarding representation of Applicant and the attorney-client privilege * * *." At the hearing, appellants attempted to call Waterman in spite of the earlier exclusion, but the hearing examiner precluded that testimony based upon the prior ruling.

■ The hearing examiner had the discretion to determine the admissibility of evidence, and our review is limited to whether the administrative tribunal abused its discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058; see, also, *State ex rel. Crescent Metal Prod., Inc. v. Indus. Comm.* (1980), 61 Ohio St.2d 280, 282, 15 O.O.3d 285, 286, 400 N.E.2d 1354, 1356 (applying abuse of discretion standard of review to evidentiary determination by administrative tribunal). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Bob Daniels Buick Co. v. Gen. Motors Corp.* (Oct. 13, 1998), Franklin App. No. 97APE12–1701, unreported, 1998 WL 720018

(applying *Blakemore v. Blakemore* [1983], 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142, to an administrative determination).

■ Here, the hearing examiner admitted into evidence three 1990 letters exchanged between Waterman and the OEPA in which appellants contend Waterman misrepresented the nature of the WTI partnership to the OEPA in an effort to "avoid [OEPA] scrutiny of the ownership transformations in the WTI partnership." While appellants insist that the hearing examiner also should have allowed them to interrogate Waterman to adduce an explanation for his actions in authoring the 1990 letters, appellants have not demonstrated how Waterman's testimony would have provided additional evidence of WTI's noncompliance with environmental regulations. The documentary basis for Waterman's testimony, the letters themselves, had already been admitted. Because appellants have failed to demonstrate that Waterman's testimony would have contributed any evidence favorable to appellants beyond that in the text of the letters already admitted into evidence, we cannot find an abuse of discretion. See Evid.R. 403(B); see, also, *Arthur Young & Co. v. Kelly* (1993), 88 Ohio App.3d 343, 349, 623 N.E.2d 1303, 1306–1307, motion to certify the record dismissed, (1993), 67 Ohio St.3d 1462, 619 N.E.2d 697.

■ Appellants also argue in their second assignment of error that the hearing examiner and HWFB ignored evidence of the alleged fraud effected by Waterman's communications with OEPA. Appellants contend that a 1989 Von Roll America, Inc. ("Von Roll") interoffice memorandum and the 1990 Waterman letters demonstrate that Von Roll was aware that WTI should have applied for a permit modification in the planning stages of its buyout of the WTI partners.

Waterman's alleged misrepresentation of the status of WTI to OEPA has limited evidentiary significance in relation to the citing criteria set forth in R.C. 3734.05(D)(6). Nevertheless, the hearing examiner admitted into evidence the 1990 letters and the 1989 interoffice memorandum over objections as to relevance. WTI's failure to apply for a permit modification and the significance of that omission were clearly articulated in the 1993 report. The administrative tribunal considered the report in its review of the compliance history of WTI, the individual WTI partnership entities, and the various officers and directors of those entities. After a review of that evidence and the extensive compliance history submitted by the staff of the OEPA, the hearing examiner concluded that "the case does not demonstrate a history of significant noncompliance." (June 20, 1997 Report and Recommendation at 6, paragraph 22.) Given the substance of the admitted evidence relating to the purported misrepresentation and the hearing examiner's finding that the evidence did not illustrate significant noncompliance, the record shows that the hearing officer did not ignore appellants' allegations.

Appellants' second assignment of error is overruled.

Appellants' third assignment of error asserts that HWFB improperly prevented them from presenting evidence relating to Von Roll's alleged unauthorized dealings with Iraq, its dealings with organized crime by an affiliate, its settling of smokestack emissions ("downwash") from the East Liverpool facility into the neighboring community, its emission of untreated ("fugitive") gases from the facility, a gas leak incident at the facility, fires purportedly occurring at the facility, the adequacy of the facility's emergency planning, the mercury level of smokestack emissions during trial burns of the incinerator, and allegations that Von Roll improperly subsidized the North Ohio Valley Air Authority ("NOVAA"), an agency that monitors the facility.

HWFB's scope of review at a permit modification adjudication hearing is restricted by R.C. 3734.05(D)(3)(c), which indicates that HWFB, upon receipt of the application from the director, shall "[p]romptly fix a date for an adjudication hearing * * * at which hearing the board shall hear and decide all disputed issues between the parties *respecting the approval or disapproval of the application.*" (Emphasis added.) In turn, R.C. 3734.05(D)(6) sets forth the citing criteria that HWFB must consider. Because R.C. 3734.05(D)(3)(c) limits HWFB's review to issues relating to the citing criteria, any issues not relating to those criteria may properly be excluded by the hearing examiner. Here, the hearing examiner admitted appellants' evidence concerning Von Roll's purported illicit arms transactions with Iraq and dealings with organized crime, but ultimately concluded the evidence of Von Roll's alleged criminal activities related to issues beyond the scope of the permit modification hearing.

R.C. 3734.05(D)(6)(f) is the only citing criterion relating directly to the owner or operator of the facility; all of the other criteria relate to facility design and operation. If the proposed transferee has been involved in any prior activity involving hazardous waste, R.C. 3734.05(D)(6)(f) requires HWFB, before issuing a hazardous waste facility installation and operation permit, to find that the proposed transferee has a history of compliance with R.C. Chapters 3704, 3734, and 6111, and the federal Resource Conservation and Recovery Act. R.C. Chapter 3704 deals with air pollution control, R.C. Chapter 3734 deals with solid and hazardous wastes, and R.C. Chapter 6111 deals with water pollution control. Appellants have not demonstrated how Von Roll's purported dealings with Iraq and organized crime amount to violations of those environmental laws.

As to R.C. Chapter 3734, R.C. 3734.44(B) prohibits HWFB from issuing or renewing a permit if any business concern required to be listed in the disclosure statement or having a beneficial interest in the applicant's business has been convicted of various crimes, including unlawful transfer of firearms. The evidence relating to Von Roll's dealings with Iraq consists of two newspaper

articles. Initially, newspaper articles are generally inadmissible as evidence of the facts stated in them. See, *e.g., State v. Self* (1996), 112 Ohio App.3d 688, 694–695, 679 N.E.2d 1173, 1177–1178. Moreover, statements relating to Thomas Petrizzo's criminal fraud prosecution do not demonstrate that Von Roll was convicted of a crime. Given the inapplicability of the evidence of Von Roll's alleged illicit activities to the specific citing criteria advanced in R.C. 3734.05(D)(6) and the limited probative value of that evidence in relation to the general issuance conditions set forth in R.C. 3734.44, HWFB did not err in granting the permit modification over that evidence.

■ Appellants attempted to submit evidence of WTI's allegedly improper payments to NOVAA by way of a motion for leave to submit additional evidence, filed after the hearing examiner issued the report and recommendation to HWFB. The proffered evidence on the subject of payments to NOVAA consisted solely of a newspaper article containing a bulleted timeline of events concerning NOVAA and WTI. Appellants argue that HWFB should have investigated the alleged corruption within the monitoring agency.

■ Ohio Adm.Code 3734–1–20(D), which governs the adjudication hearing process, indicates that "[a]fter the conclusion of the adjudication hearing and prior to the filing with the board of a report, the hearing examiner, upon motion of a party, may permit the parties to file newly discovered evidence that by due diligence could not have been discovered prior to the adjudication hearing." Admission of additional evidence after the conclusion of the adjudication hearing is in the sound discretion of the administrative tribunal. Cf. *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 629 N.E.2d 500, and *Douglas Elec. Corp. v. Grace* (1990), 70 Ohio App.3d 7, 590 N.E.2d 363 (applying comparable Civ.R. 59[A][8]). Although neither the hearing examiner nor HWFB ruled on appellants' motion for leave to file additional evidence, we assume for the purposes of appeal that appellants' motion was denied, and thus we examine the denial under the abuse-of-discretion standard. See *Maust v. Palmer* (1994), 94 Ohio App.3d 764, 641 N.E.2d 818.

Apart from the deficiency presented in appellants' repeated reliance on newspaper articles, appellants filed their motion on July 10, 1997, over two weeks after the hearing examiner filed the report and recommendation with HWFB. The motion was therefore filed untimely and properly overruled on that basis. Moreover, although evidence of alleged illicit payments bears tangentially on Von Roll's compliance with environmental laws, appellants have failed to demonstrate that in the exercise of due diligence, they could not discover that evidence prior to the adjudication hearing. Although the newspaper article was published after the hearing concluded, the article refers to events that occurred over the thirty-

year period from 1967 to 1997. Accordingly, HWFB did not abuse its discretion in overruling appellants' motion for leave to file additional evidence.

The remaining evidence set forth in appellants' third assignment of error, relating to downwash, fugitive gases, a gas-leak incident, fires, emergency planning, and the mercury levels of smokestack emissions, was excluded primarily by the hearing examiner's ruling on WTI's motion *in limine*. Although the hearing examiner admitted some photographs and limited testimony from Alonzo Spencer, an East Liverpool resident, the hearing examiner categorized the balance of the issues raised in appellants' third assignment of error as "facility design matters" that were outside the scope of R.C. 3734.05(D)(6)(b), (e), and (f).

In support, the hearing examiner quoted R.C. 3734.05(I)(4)(a), which provided:

"The hazardous waste facility board shall approve or disapprove an application for a modification * * * of a hazardous waste facility installation and operation permit in accordance with division (D) of this section. * * * No aspect of the permitted facility or its operations that is not being modified shall be subject to review by the board under division (D) of this section." 145 Ohio Laws, Part IV, 6659, 6711, 6727.

Thus, although appellants contend that the evidence of downwash emissions should have been admitted because it illustrates the inadequate height of the WTI facility's smokestack, the limited purpose appellants articulated relates solely to facility design. Notably, appellants did not inform the hearing examiner, nor do they indicate on appeal, which environmental laws or regulations the downwash phenomenon contravenes. Instead, appellants argue generally that downwash is unacceptable. Given those circumstances, the hearing examiner did not abuse his discretion in excluding that evidence as bearing only upon facility design.

The remaining evidence in appellants' third assignment of error relates to Von Roll's compliance with various environmental regulations, as well as facility design. Von Roll, as the sole owner of the four WTI partners since 1991, was ultimately responsible for the operation of the WTI facility through the management structure of interlocking directors and officers with the WTI partners. Accordingly, at least evidence relating to potential post–1991 WTI violations of environmental laws or the permit itself bears directly on Von Roll's compliance history under R.C. 3734.05(D)(6)(f). Because the applicant's compliance history was directly at issue, the hearing examiner improperly excluded evidence of the gas leak, fire, mercury emission, and contingency plan.

Notwithstanding the improper exclusion of that evidence, appellants have not demonstrated they were materially prejudiced by the exclusion. The hearing examiner admitted a detailed compliance history from the staff of the OEPA that

reflects assessments from various monitoring agencies of the general types of evidence that appellants sought to admit. For example, appellants attempted to admit numerous OEPA letters concerning fires occurring in 1994 and 1995 and implementation of a contingency plan, and Von Roll letters reflecting changes implemented to safeguard against fires, a November 16, 1994 compliance history citing WTI's failure to amend the contingency plan in 1994, a January 14, 1994 NOVAA letter to OEPA discussing the agency's concerns with fugitive gas emissions, evidence of WTI's failure to amend the contingency plan in 1993, a Von Roll (Ohio), Inc. incident report, concerning the fugitive gas discharge incident on December 10, 1993, and proposed corrective measures, and the director's final findings and orders regarding excessive mercury emissions during the March 11, 1993 trial burn.

While the admission of some evidence concerning fires, gas leaks, and mercury emissions, and the exclusion of other evidence pertaining to those subjects is inconsistent, appellants have to demonstrate prejudice; appellants sought to present, through multiple witnesses, evidence that was significantly documented in the voluminous compliance history submitted through the staff of the OEPA.

For the foregoing reasons, appellants' third assignment of error is overruled.

Having overruled appellants' three assignments of error, we affirm the order of the Hazardous Waste Facility Board.

*Order affirmed.*

DESHLER, P.J., and JOHN C. YOUNG, J., concur.