ESTATE OF RIDLEY, Appellant,

v.

HAMILTON COUNTY BOARD OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES et al., Appellees.

[Cite as *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation &
Developmental Disabilities*, 150 Ohio App.3d 383, 2002-Ohio-6344.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010791.

Decided Nov. 22, 2002.

384

Robert L. Schwartz; McKinney & Namei and Raymond L. Katz, for appellant.

McCaslin, Imbus, McCaslin and Bernard W. Wharton; Hamilton County Prosecutor's Office and David T. Stevenson, for appellees Hamilton County Board of Mental Retardation and Developmental Disabilities, Jerry Clark, and Sonjua Day.

Fay Dupuis, City Solicitor, and Thomas S. Harris, Assistant City Solicitor, for appellee city of Cincinnati.

HILDEBRANDT, Presiding Judge.

{¶ 1} Plaintiff-appellant the Estate of Jerome Ridley ("the estate") appeals from the trial court's judgment dismissing its second amended complaint for

failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). For the following reasons, we affirm in part and reverse in part and remand this case for further proceedings.

{¶ 2} Because this appeal is based on the dismissal of the estate's claims, the following facts taken from the estate's second amended complaint are accepted as true.[1]

{¶ 3} Jerome Ridley was a mentally retarded adult male who had been a client of defendant-appellee Hamilton County Board of Mental Retardation and Developmental Disabilities ("MRDD") since February 1998. MRDD had originally assigned one of its employees, defendant-appellee Jerry Clark, the task of coordinating all of the services necessary to assist Ridley in maintaining his well-being and a suitable living environment. Clark helped Ridley to secure an attic apartment at 1805 Queen City, Cincinnati, Ohio. The apartment contained two small windows, but the ratio of window space to the total square feet of the apartment was below the required ratio in the Cincinnati Building Code. Clark regularly visited Ridley up to five times a week.

{¶ 4} In October 1998, MRDD assigned another employee, defendant-appellee Sonjua Day, to assist in managing Ridley's needs. Day's job responsibilities consisted of visiting Ridley three times a week to train him in daily living skills and to assist him in maintaining all financial and medical benefits, in scheduling medical appointments, in building and maintaining relationships with people in the community, and in developing coping skills to ensure his continued well-being. Clark and Day each executed a form acknowledging and promising to enforce the rights of mentally retarded and developmentally disabled persons set forth in R.C. 5123.62.

{¶ 5} Both Clark and Day were aware that Ridley was not able to care for himself during severe weather. Specifically, Ridley would dress in many layers of heavy clothing on very hot days, confine himself in his apartment without air conditioning or a fan, and shut his windows. According to Day's case-management notes, she was aware that Ridley's tendency to overdress on warm days was taking a toll on him. On July 8, 1999, Day wrote, "It was so hot in his [Ridley's] apartment that I had to open the windows but Jerome kept shutting [them]. I told him he needed to come outside for air." On July 15, 1999, Day indicated in her notes that it took her "several times" to wake Ridley up before he would come outside. "He was over dressed for the weather." By that point, Day had decided that since Ridley was "not working with the plan," she was going to "close out" his case. There was no documentation that MRDD or any of its employees contacted Ridley to inform him that Day had terminated her services.

---

1. *Perez v. Cleveland* (1993), 66 Ohio St.3d 397, 613 N.E.2d 199.

{¶ 6} During the following two weeks, July 16, 1999, to July 28, 1999, a severe heat wave hit Cincinnati and approximately ten heat-related deaths were reported in the news. During this period, neither Day, Clark, nor any other MRDD employee attempted to visit Ridley or to communicate with him. Although it is unclear from the complaint, on either July 28 or 29, 1999, Clark went to check on Ridley "due to the heat" and found him dead from heat stroke. Apparently, Ridley had nailed his door shut and had sealed his windows with duct tape.

{¶ 7} On July 3, 2000, the estate filed a wrongful-death and survivorship action against MRDD. After conducting initial discovery on the original allegations, the estate filed an amended complaint on April 12, 2001, adding defendant-appellee city of Cincinnati Building Department ("the city"), The CSL Group, Inc., and Chad Lane[2] as defendants. On September 21, 2001, the estate filed a second amended complaint ("the complaint") naming two employees of MRDD, Jerry Clark, and Sonjua Day, in their individual capacities, as additional defendants. In the complaint, the estate also asserted a second cause of action, requesting the court to declare any defense of immunity by the state or county unconstitutional.

{¶ 8} The estate alleged that the negligence of MRDD and its employees in failing to visit Ridley during the extreme heat wave during the last two weeks of July 1999 had resulted in Ridley's death by heat stroke. With respect to the city, the estate alleged that the city had negligently inspected the building in which Ridley's apartment was located by failing to enforce the building code's required ratio of window space to square footage.

{¶ 9} MRDD, Clark, Day, and the city moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The city maintained, in its motion to dismiss that it was immune from civil liability, pursuant to R.C. 2744.01(C)(2)(q), for any acts related to inspecting and enforcing building codes. MRDD and its employees argued in their motion that they had no duty to visit Ridley those last two weeks in July because Ridley had withdrawn his consent to receive the services that MRDD offered. Additionally, MRDD maintained that even if there was a duty owed to Ridley, it, as a political subdivision, was immune from liability pursuant to R.C. Chapter 2744, the Political Subdivision Tort Liability Act. In two separate entries, the trial court dismissed the city from the case and granted MRDD's motion to dismiss the complaint. The estate has timely appealed both of these entries, bringing forth two assignments of error.

{¶ 10} Initially we note that, although the notice of appeal indicates that the estate is appealing the trial court's dismissal of the city, there is no specific

---

2. After reaching a settlement with the estate, Lane and The CSL Group, Inc., were dismissed as defendants.

assignment of error in that regard. The first assignment of error does assert that the trial court erred in dismissing the complaint for "failure to state a claim against the defendants-appellees." Presumably, "defendants-appellees" include the city. But the estate does not present any argument in its appellate brief with respect to the court's dismissal of the city. Instead, the estate's argument centers on the actions and omissions of MRDD and its employees. Because there is no specific assignment of error or argument presented with respect to the city, we do not disturb the trial court's dismissal of the city from this case.[3]

{¶ 11} As stated above, in its first assignment of error, the estate maintains that the trial court erred in dismissing its complaint, with prejudice, with respect to MRDD, Day, and Clark. Holding that although the estate set forth the minimum allegations necessary to sustain a wrongful-death claim and to defeat a Civ.R. 12(B)(6) motion MRDD was nonetheless immune from liability under R.C. Chapter 2744, we affirm the trial court's judgment in MRDD's favor. With respect to Day and Clark's immunity, however, we hold that the allegations in the complaint concerning their behavior, if proved true, met the requirements for an exception to immunity for employees of political subdivisions. Accordingly, we reverse the judgment of the court with respect to Day and Clark.

{¶ 12} A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and the trial court, in ruling on such a motion, must take all the allegations in the complaint to be true, drawing all reasonable inferences in favor of the nonmoving party.[4] A court may dismiss a complaint only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief.[5] Finally, a complaint should not necessarily be dismissed for failure to state a claim because the allegations do not support the legal theory proposed by the plaintiff; instead, the complaint should be examined to see whether the allegations provide for relief under any viable legal theory.[6] Appellate review of a Civ.R. 12(B)(6) dismissal is de novo.[7]

{¶ 13} Essentially the estate asserted a negligence claim against MRDD, Clark, and Day in its complaint. To sustain such a claim, it is necessary to

---

3. See App.R. 12(A)(2) and 16(A)(7).

4. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753; *Pollock v. Rashid* (1996), 117 Ohio App.3d 361, 367, 690 N.E.2d 903.

5. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; *Pollock,* supra, at 367–368, 690 N.E.2d 903.

6. *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 653 N.E.2d 1186.

7. *Hunt v. Marksman Prod., Div. of S/R Industries, Inc.* (1995), 101 Ohio App.3d 760, 656 N.E.2d 726.

demonstrate the following: (1) the existence of a legal duty owing to plaintiff; (2) a breach of that duty; and (3) proximate causation.[8] If there is no duty imposed by law, there can be no legal liability for negligence.[9] In its motion to dismiss, MRDD maintained that it owed no duty to Ridley. The estate disagreed. While the issue of immunity was also briefed and argued before the trial court, the record is unclear as to why the court dismissed the complaint against MRDD. MRDD now maintains that the reason for the court's dismissal was its determination that MRDD owed no duty to Ridley, not that MRDD was immune from liability pursuant to R.C. Chapter 2744. Thus, MRDD contends that this court does not even need to reach the issue of immunity. We disagree. While we address MRDD's contention that it owed no duty to Ridley, we note that whether a county board of mental retardation and development disabilities is immune from liability is a pertinent question of law[10] that we must also analyze in our review.[11]

{¶ 14} With that established, we turn to the complaint's allegations concerning the duties owed in this case. The estate alleged that MRDD and its employees had a duty not only to coordinate, develop, and plan services for Ridley to ensure his well-being, but a duty to make sure that those services were being carried out, pursuant to R.C. Chapters 5123 and 5126. We agree and hold that such duties are set forth and established by the following code sections. R.C. 5126.05 states that a county board of mental retardation and developmental disabilities shall provide "supportive home services, and adult services * * *," and R.C. 5126.41 states that the board "shall identify residents of the county for whom supported living is to be provided * * * [and] shall assist the residents in identifying their individual service needs [and] in developing an individual service plan. * * * The county board shall ensure that the individual receives from the provider the services contracted for * * *."

{¶ 15} A county board of mental retardation and developmental disabilities exists to serve the needs of the mentally retarded and developmentally disabled residents of a given county. The board has a duty to set up an individual plan for each resident, to provide services to the resident, and to ensure that those services are being carried out. The estate alleged that duty in the complaint when it asserted that Ridley was a client of MRDD and that MRDD had assigned

8. *Person v. Gum* (1983), 7 Ohio App.3d 307, 7 OBR 390, 455 N.E.2d 713.

9. *Moncol v. N. Royalton Bd. of Edn.* (1978), 55 Ohio St.2d 72, 9 O.O.3d 75, 378 N.E.2d 155.

10. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862.

11. *Kohls v. Perry Cty. Bd. of Mental Retardation & Developmental Disabilities* (Sept. 29, 1994), 10th Dist. No. 94APE01-122.

two employees, Clark and Day, to provide services to Ridley. The complaint alleged that Clark had the duty to set up an individual services plan for Ridley and that Day was to assist in providing services by visiting Ridley three times a week to assist him in his daily living skills so that he would be able to thrive in the community.

{¶ 16} MRDD maintains that it owed no duty to Ridley after he had terminated his consent to receive MRDD's services. (Interestingly, this argument presumes that MRDD did have a duty to Ridley prior to the termination of consent.) MRDD argues that it should be inferred that Ridley withdrew his consent to receive services from MRDD from the complaint's allegation that "when Ridley was in most serious need of the services of MRDD," Day "closed out" those services because "Ridley wouldn't work with the plan." We disagree. All reasonable inferences must be drawn in favor of the estate, the nonmoving party. When the allegation is read in the context of the entire complaint, there is no inference that Ridley withdrew his consent to receive MRDD's services. The import of the allegation is merely to convey that MRDD and its employees had stopped providing services to Ridley and had not visited him the following two weeks during the heat wave. The estate did not allege that Ridley terminated the services himself.

{¶ 17} Further, MRDD's argument that Ridley terminated MRDD's services is inconsistent with the other allegations set forth in the complaint, which we must accept as true. The estate alleged that Clark, after two weeks of extreme heat and almost three weeks after Day had allegedly "closed out services," went to visit Ridley and "another client." The fact that Clark went to check on Ridley indicates that MRDD still considered Ridley its client and, thus, that it had not recognized any termination of consent by Ridley. From this fact, it can reasonably be inferred that Ridley was a client of MRDD who was supposed to be receiving its services during the time when no employee visited Ridley. Accordingly, there was a duty for MRDD to ensure that, as its client, Ridley was receiving the services set forth in his individual services plan.

■ {¶ 18} Having concluded that MRDD and its employees did have a duty to ensure that Ridley was receiving his services, we also hold that the estate pleaded the remaining elements necessary to sustain a wrongful-death action. The estate asserted that MRDD and its employees breached their duty by failing to continue services to Ridley during July 1999. The complaint alleged that Day terminated Ridley's services and that no other employee visited Ridley during the heat wave that occurred the following two weeks. Finally, the estate alleged that this breach was the proximate cause of Ridley's death, in view of Ridley's dependence on MRDD's visits to Ridley three to five times a week and MRDD's

knowledge that Ridley tended to overdress for the weather and to stay in his apartment with the windows shut.

{¶ 19} The estate also asserted that R.C. 5123.61, 5123.62, and 5126.431 imposed duties upon MRDD and its employees. After reviewing those sections, however, we conclude either that a duty was not imposed upon MRDD and its employees[12] or that, if a duty was imposed, the allegations in the complaint were insufficient to indicate a breach of that duty.[13]

{¶ 20} Based on the foregoing, the estate pleaded sufficient facts to survive a Civ.R. 12(B)(6) motion on a wrongful-death action. While the estate may not be able to prove any of its allegations, including that Ridley had not withdrawn his consent to receive services, the law requires only that a mere statement of the case be set forth so that if the facts are true, the plaintiff may prevail under some valid legal theory.

{¶ 21} Despite the duty owed to Ridley, MRDD and its employees assert that they were immune from liability pursuant to R.C. Chapter 2744. R.C. 2744.02(A)(1) provides blanket immunity to a political subdivision for any damage to persons or property allegedly caused by an act or omission of the subdivision or its employee in connection with a governmental or proprietary function. Although the estate refers to MRDD as a political subdivision, its argument in its appellate brief insinuates that MRDD does not meet the statutory definition of a political subdivision. Thus, we address that issue first.

{¶ 22} For purposes of R.C. Chapter 2744, a political subdivision is defined as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."[14] The statutory definition also sets forth a non-exhaustive list of entities that may not meet the definition of a political subdivision, but that are to be treated as such for purposes of R.C. Chapter 2744.[15] A county board of mental retardation and developmental disabilities is not included in that list.

{¶ 23} MRDD, relying on *Wilson v. Stark County Dept. of Human Services,*[16] asserts that it is a unit of Hamilton County and that because the county is

---

12. R.C. 5126.431 imposes a duty upon the *Department* of Mental Retardation and Developmental Disabilities and not a duty upon a county board.

13. See R.C. 5123.61 and 5123.62.

14. R.C. 2744.01(F).

15. See 1981 Ohio Atty. Gen. Ops. No. 81–050, fn. 1.

16. (1994), 70 Ohio St.3d 450, 639 N.E.2d 105.

immune, that immunity extends to MRDD itself. While we ultimately hold that a county board of mental retardation and developmental disabilities is a political subdivision, we do so because a county board is a "body corporate and politic responsible for governmental activities" and not because the county's immunity extends to MRDD.

{¶ 24} In *Wilson*, the Ohio Supreme Court held that a county's immunity under R.C. Chapter 2744 extends to a department of human services because the "operation of a department of human services" is considered a governmental function of a political subdivision.[17] But R.C. Chapter 2744 does not provide that the operation of a board of mental retardation and developmental disabilities is a governmental function. Instead, R.C. 2744.01(C)(1)(*o*) lists, as a governmental function, the operation of "mental health facilities, mental retardation or developmental disabilities facilities, alcohol treatment centers, and children's homes." Here, MRDD was not operating a facility but was providing services to Ridley in his own home. Thus, the estate is correct when it asserts that Hamilton County's immunity cannot be extended to MRDD as the county's immunity was extended to a department of human services in *Wilson*.

{¶ 25} Because MRDD is not one of the other specific entities mentioned in the definition of a political subdivision, we must determine whether MRDD is a "body corporate and politic responsible for governmental activities in a geographic region smaller than the state," thus qualifying in this particular respect as a political subdivision. Clearly, MRDD operates in a geographic region smaller than the state. Regarding the other requirement, the Ohio Supreme Court has defined a "body corporate and politic" as a "group of people regarded in a political (rather than private) sense and organized under a single governmental authority."[18] A county board of mental retardation and developmental disabilities meets this definition. It is run by a group of people, a majority of whom are appointed by the county board of commissioners, who perform governmental functions prescribed by the legislature. MRDD arranges and provides services for adults and children with mental retardation and developmental disabilities. Under these circumstances, we hold that the MRDD is a political subdivision for purposes of R.C. Chapter 2744.

{¶ 26} R.C. Chapter 2744 sets forth a three-tiered analysis to determine whether a political subdivision is immune from liability. First, R.C. 2744.01(A) sets forth the general rule that political subdivisions are not liable in damages for the death or injuries of a person. Second, a political subdivision may be stripped

---

**17.** Id. at 452, 639 N.E.2d 105.

**18.** *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 555, 733 N.E.2d 1141, quoting Black's Law Dictionary (7th Ed.1996) 167.

of its immunity if it falls into one of the five exceptions set forth in R.C. 2744.02(B).[19] Finally, if immunity is removed at the second tier of analysis, immunity may be reinstated if one of the defenses listed in R.C. 2744.03 applies. It is important to note that the defenses in R.C. 2744.03 do not come into play unless liability attaches under one of the exceptions in R.C. 2744.02(B).[20]

{¶ 27} The estate, in attempting to refute MRDD's general immunity, failed to address what exception under R.C. 2744.02(B)(5) might apply to pierce MRDD's immunity. Instead, the estate, by arguing that the actions of Day and Clark were reckless and wanton, attempted to apply R.C. 2744.03(A)(5) as an additional exception to pierce the blanket of immunity granted to MRDD. R.C. 2744.03(A)(5) provides that a political subdivision does not have immunity if the injury "resulted from the exercise of judgment or discretion in determining * * * how to use * * * personnel * * * and other resources" and if the judgment "was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 28} As stated above, R.C. 2744.03 does not provide exceptions to the blanket immunity afforded by R.C. 2744.02(A)(1). Only those exceptions found in R.C. 2744.02(B) serve such a purpose. R.C. 2744.03 provides defenses to liability only, and those defenses cannot be used to establish liability.[21] Thus, we must now review the exceptions set forth in R.C. 2744.02(B) to determine whether MRDD's immunity could have been pierced in this case.

{¶ 29} R.C. 2744.02(B)(1) provides that a political subdivision loses its immunity if injuries result from the operation of a motor vehicle by subdivision employees upon a public highway. That was not the case here. R.C. 2744.02(B)(2) provides that political subdivisions are liable for injuries that occur as a result of an employee's actions or omissions with respect to a proprietary function of the political subdivision. Here, it is undisputed that Day and Clark, in providing services to Ridley, were performing a governmental function. Thus, this exception was not applicable. MRDD did not stand exposed to liability under the exceptions set forth in R.C. 2744.02(B)(3) and 2744.02(B)(4) either. R.C. 2744.02(B)(3) provides that a political subdivision is liable for personal injuries caused by its failure to maintain public roads and the like, and R.C. 2744.02(B)(4) provides that immunity may be pierced when the personal injuries

---

19. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

20. Id.

21. Id. at 32, 697 N.E.2d 610, citing *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 135, 679 N.E.2d 1109.

occur in buildings used in connection with the performance of a governmental function.

{¶ 30}   The only exception that MRDD may have possibly fallen under is R.C. 2744.02(B)(5), which states that a political subdivision is liable for personal injuries or death when "liability is expressly imposed upon the political subdivision by a section of the Revised Code. * * * Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."

{¶ 31}   As discussed above, we have held that MRDD owed a duty to Ridley to set up a service plan to meet his needs and a duty to ensure that those services were being provided pursuant to R.C. 5126.05 and 5126.41.  Neither of those two sections, however, expressly imposes liability for failing to carry out those responsibilities.[22]  Accordingly, the statutory-liability exception was not applicable, and MRDD's blanket immunity remained intact.  Because MRDD was, as a matter of law, immune from liability, we affirm the trial court's judgment dismissing the claims against it.

{¶ 32}   Briefly, we address the estate's contention that the trial court erred in dismissing its complaint against MRDD with prejudice.  We hold that the court did not abuse its discretion in dismissing the complaint with prejudice when the estate had been permitted to amend its complaint twice before the motion to dismiss was considered, and when it was evident from the face of the complaint that MRDD was immune from liability.

{¶ 33}   Finally, as an aside, we have some lingering concern about the dismissal of the estate's claims against MRDD. Like the Ohio Supreme Court, we find it troubling that a political subdivision has the potential "to entirely disregard affirmative duties and yet avoid liability under the cloak of sovereign immunity."[23]  With that said, we now address whether Clark and Day were stripped of their immunity as employees of a political subdivision.

{¶ 34}   R.C. 2744.01(A)(1) grants both a political subdivision and its employees blanket immunity from tort liability.  But the statutory scheme allows only a political subdivision, not its employees, to be stripped of immunity if one of the exceptions set forth in R.C. 2744.02(B) applies.  Exceptions to immunity for employees who are being sued in their individual capacity, as in the case sub

---

**22.**  For reference to another statute that imposes a duty but does not impose liability, see *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554.

**23.**  See *Marshall v. Montgomery Cty. Children Serv. Bd.* (2001), 92 Ohio St.3d 348, 353, 750 N.E.2d 549.

judice, are set forth in R.C. 2744.03(A)(6).[24] R.C. 2744.03(A)(6) provides that an employee is immune from liability unless one of the following applies: (a) his acts or omissions were manifestly outside the scope of his employment or official responsibilities, (b) his acts or omissions were with malicious purpose, in bad faith, or conducted in a wanton or reckless manner, or (c) liability is expressly imposed upon the employee by another section of the Revised Code.[25]

{¶ 35} The estate alleges in its complaint that the actions of Day and Clark in dealing with Ridley involved wanton or reckless misbehavior. The Ohio Supreme Court has defined "reckless" as "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." The facts alleged in the complaint, if they are proven true, tended to indicate reckless and wanton behavior on the part of Clark and Day. For example, when Day terminated her services to Ridley, she did not inform Ridley or anyone else at MRDD of her actions. Further, she did not attempt to refer Ridley to another employee at MRDD who could continue to provide services to him. (The allegations in the pleadings seeking to dismiss the estate's claims against Day and Clark implied that Day was simply frustrated with Ridley and was terminating her own involvement with Ridley, not MRDD's involvement.)

{¶ 36} With respect to Clark, the estate alleged that he also acted in a reckless and wanton manner. Clark, who was very familiar with Ridley and Ridley's specific challenges and eccentricities through visiting Ridley several times a week, failed to follow up on Day's work and failed, himself, to visit Ridley during the extreme heat wave.

{¶ 37} We hold, in light of the allegations in the complaint that both Day and Clark knew of Ridley's tendency to overdress in warm weather and yet both failed to provide services to him during an extreme heat wave, that there was a sufficient basis to make an exception to immunity for political subdivision employees and, thus, that the estate's claims against Clark and Day, in their individual capacities, were sufficient to withstand a motion to dismiss. Accordingly, we reverse the judgment of the trial court dismissing the estate's claims against Day and Clark. The first assignment of error is sustained in part and overruled in part.

{¶ 38} In its second and final assignment of error, the estate contends that the trial court erred in failing to declare that R.C. Chapter 2744 is unconstitution-

---

24. *Abdalla v. Olexia* (Oct. 6, 1999), 7th Dist. No. 97–JE–43, 1999 WL 803592.

25. *Harris v. Kennedy* (1996), 116 Ohio App.3d 687, 691, 689 N.E.2d 53.

al. We disagree. The trial court did not have jurisdiction to consider the constitutionality of R.C. Chapter 2744 because the estate failed to serve the complaint upon the Ohio Attorney General.

{¶ 39} R.C. 2721.12 provides that "[i]f any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also shall be served with a copy of the *complaint* in the action or proceeding and shall be heard." The Ohio Supreme Court, in interpreting the former version of this statute, which provided that the Attorney General had to be served "with a copy of the proceedings," held that when challenging the constitutionality of a statute, the complaining party must raise the constitutionality issue in the complaint or in an amended complaint and must serve the Attorney General with the complaint.[26] Serving a copy of any other pleading that challenges the constitutionality of a statute is insufficient to vest the trial court with jurisdiction. If the constitutionality of a statute is raised later in the proceedings, the complaining party must amend the complaint and serve that pleading upon the Attorney General so that all interested parties are identified. Failure to do so deprives the trial court of jurisdiction.[27]

{¶ 40} Here, the estate challenged the constitutionality of R.C. Chapter 2744 in its second amended complaint but never served a copy of that complaint upon the Attorney General. Instead, when it again challenged the constitutionality of the statute in its pleading entitled "Supplemental Reply to Defendant MRDD's Motion To Dismiss Plaintiff's Second Amended Complaint," it served that pleading upon the Attorney General. But that was not sufficient to vest the trial court with jurisdiction to hear a constitutional challenge to R.C. Chapter 2744. The amended complaint itself must have been served upon the Attorney General.

{¶ 41} Because the estate did not serve a copy of the amended complaint upon the Attorney General, the requirements of R.C. 2721.12 were not fulfilled, and the trial court was not vested with jurisdiction to hear a constitutional challenge to R.C. Chapter 2744.[28] The second assignment of error is overruled.

{¶ 42} In sum, we affirm the judgment of the trial court with respect to MRDD and the city, but reverse the judgment of the court with respect to Clark

---

26. *Cicco v. Stockmaster* (2000), 89 Ohio St.3d 95, 97, 728 N.E.2d 1066. We note that the amended version of R.C. 2721.12 incorporates the holding in *Cicco*.

27. Id.

28. See *Sturgill v. Worcester*, 3d Dist. No. 9–01–41, 2002-Ohio-2104, at ¶ 12–13.

and Day, and remand this cause for further proceedings consistent with the law and this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

GORMAN and WINKLER, JJ., concur.