ESTATE OF RIDLEY, APPELLANT, *v.* HAMILTON COUNTY BOARD OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES ET AL., APPELLEES.

[Cite as *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities,* 102 Ohio St.3d 230, 2004-Ohio-2629.]

(No. 2003–0022—Submitted December 2, 2003—Decided June 9, 2004.)

O'DONNELL, J.

{¶ 1} The estate of Jerome Ridley commenced a wrongful-death and survival action against the Hamilton County Board of Mental Retardation and Developmental Disabilities, its employees Jerry Clark and Sonjua Day, in their individual capacities, and the city of Cincinnati Building Department.

{¶ 2} In its complaint, the estate alleged that Ridley, a mentally retarded adult male, received assistance from the board beginning in February 1998. Initially, the board assigned to Jerry Clark the responsibility of coordinating all services to Ridley. Clark arranged for Ridley to reside in an attic apartment located in Cincinnati, Ohio, and he visited Ridley several times each week to check on his well-being. In October 1998, however, the board assigned Sonjua Day, another board caseworker, the responsibility of caring for and managing Ridley, including the obligation to visit him several times each week.

{¶ 3} According to the complaint, both Clark and Day knew that in hot weather, Ridley would dress wearing several layers of warm clothing, close the windows in his attic apartment, and confine himself there without the benefit of air-conditioning. According to Day's case management entries, she visited Ridley on July 15, 1999, at his apartment, which "was very hot." She further indicated that she tried "several times to wake up Jerome [Ridley] to come outside" and that, although he eventually went outside, he overdressed for the weather. At that time, because Ridley would not work with the plan and because she "couldn't

get him to do anything," Day " 'closed out' her oversight and help" for Ridley. Additionally, according to the complaint filed in this case, there was no documentation that the board or any of its employees ever informed Ridley, his family, or other authorities that Day was "done with him."

{¶ 4} The complaint further alleged that from July 16 through July 28, 1999, when a heat wave struck the Cincinnati area and resulted in several heat-related deaths, neither Day nor Clark, nor any other board employee, checked on Ridley's well-being. On July 29, 1999, Clark went to check on Ridley because of the heat and found him dead from heatstroke in his apartment; Ridley had nailed the door shut and sealed his windows.

{¶ 5} Based on the foregoing, the estate alleged that the board and its employees had breached both their statutory and common-law duties by abandoning Ridley during the heat wave, thereby proximately causing his death. It also alleged that the city had failed to inspect the apartment to ensure building code compliance regarding the ratio of window area to habitable floor space. The board, its employees, and the city moved to dismiss the complaint for failure to state a claim upon which relief may be granted. The trial court granted these motions.

{¶ 6} On appeal, the court affirmed the trial court's decision to dismiss the complaint against the city because the estate had not raised any arguments regarding the city. See App.R. 12(A)(2) and 16(A)(7). It also affirmed the trial court's dismissal of the complaint against the board, concluding that the estate had failed to plead a viable negligence claim based upon R.C. 5123.61 (duty to report abuse or neglect of a mentally retarded or developmentally disabled adult), 5123.62 (the Bill of Rights for persons with mental retardation or a developmental disability), and 5126.431 (the duty of the Department of Mental Retardation and Developmental Disabilities to adopt rules for certification of providers and establishing quality assurance standards regarding supported living for persons with mental retardation or developmental disabilities), on the basis that under those statutes, "either a duty was not imposed upon [the board] and its employees or that, if a duty was imposed, the allegations in the complaint were insufficient to indicate a breach of that duty." (Footnote omitted.) *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities*, 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034, ¶ 19. The appellate court did not address whether the board was entitled to political subdivision tort liability immunity, pursuant to R.C. Chapter 2744, as to those claims.

{¶ 7} However, regarding the estate's negligence claims under R.C. 5126.05 (the duty to provide supportive home services) and 5126.41 (the duty to develop an individual service plan and ensure that the individual receives the services for which he contracted), the court determined that the estate had pled sufficient

facts to sustain an action but that the board nevertheless was immune from liability pursuant to R.C. Chapter 2744. In reaching this holding, the court concluded that, because neither R.C. 5126.05 nor 5126.41 expressly imposed liability upon the board within the meaning of R.C. 2744.02(B)(5), the board's immunity remained intact.

{¶ 8} The appellate court, however, reversed the trial court's decision to dismiss Day and Clark, holding that "[t]he facts alleged in the complaint, if they are proven true, tended to indicate reckless and wanton behavior on the part of Clark and Day," and, therefore, neither Day nor Clark was immune from liability under R.C. 2744.03(A)(6). *Ridley,* supra, 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034, at ¶ 35.

{¶ 9} Finally, the court, believing that the estate had failed to serve a copy of the second amended complaint upon the Ohio Attorney General pursuant to R.C. 2721.12, determined that the trial court had no jurisdiction to entertain the constitutional challenge to R.C. Chapter 2744.

{¶ 10} The cause is now before this court pursuant to our acceptance of a discretionary appeal.

## I

{¶ 11} In its first proposition of law, the estate asks this court to determine whether, within the meaning of R.C. 2744.02(B)(5) as in effect in 1999, see 1997 Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 1150, R.C. 5123.61(C) expressly imposes liability for failure to report known or suspected neglect or abuse of a mentally retarded or developmentally disabled adult, thereby rendering a dismissal pursuant to Civ.R. 12(B)(6) improper.

{¶ 12} As a preliminary matter, however, we must address whether the appellate court erred by determining that the estate failed to allege sufficient facts to state a negligence claim under R.C. 5123.61 because either that statute did not impose a duty upon the board and its employees, or, if it did, the "allegations in the complaint were insufficient to indicate a breach of that duty." *Ridley,* supra, 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034, at ¶ 19.

{¶ 13} In order to dismiss a complaint for failure to state a claim upon which relief may be granted, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Comm. Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. A court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

{¶ 14} "To maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, citing *Bennison v. Stillpass Transit Co.* (1966), 5 Ohio St.2d 122, 34 O.O.2d 254, 214 N.E.2d 213, paragraph one of the syllabus. Here, the estate maintains that it pled a viable claim for negligence based upon violations of the duties imposed by R.C. 5123.61(C)(1) as amended by Am.Sub. H.B. No. 606, effective March 9, 1999,[1] which provided:

{¶ 15} "Any person listed in division (C)(2) of this section, having reason to believe that a mentally retarded or developmentally disabled adult has suffered any wound, injury, disability, or condition of such a nature as to reasonably indicate abuse or neglect of that adult, shall immediately report or cause reports to be made of such information to a law enforcement agency or to the county board of mental retardation and developmental disabilities, except that if the report concerns a resident of a facility operated by the department of mental retardation and developmental disabilities the report shall be made either to a law enforcement agency or to the department." 147 Ohio Laws, Part III, 4767.

{¶ 16} Here, the board itself does not have a duty to report, as it is not a person listed in division (C)(2); however, Clark and Day, as employees of the board, had such a duty. See R.C. 5123.61(C)(2)(c). Although the estate cites R.C. 5123.61 in its complaint, it does not allege that either Clark or Day failed to make a report pursuant to division (C)(1). Even if we were to infer that these employees breached this duty, the estate has not alleged sufficient facts to demonstrate that the failure to report contributed to Ridley's death; rather, the estate alleges that because the board and its employees knew or should have known about Ridley's tendency to overdress in warm weather and confine himself to his apartment with the windows shut, their abandonment of Ridley during an extreme heat wave proximately caused his death.

{¶ 17} Based on the foregoing, the estate failed to allege sufficient facts to state a prima facie negligence claim under R.C. 5123.61(C). Therefore, we do not reach the issue of whether R.C. 5123.61(C) expressly imposes liability within the meaning of former R.C. 2744.02(B)(5).

{¶ 18} The estate also contends that the appellate court erred by affirming the trial court's judgment dismissing the city of Cincinnati Building Department. Specifically, the estate challenges the appellate court's decision to affirm that judgment because the appellate brief did not contain any arguments regarding the city. See App.R. 12(A)(2) and 16(A)(7). However, the estate failed to raise

---

1. No relevant substantive changes have been made to the current version of the statute.

this position or set forth any proposition of law regarding the city in its memorandum in support of jurisdiction before this court. Accordingly, we decline to address it. See, generally, *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 87, 572 N.E.2d 673; S.Ct.Prac.R. III(1).

{¶ 19} Therefore, the estate's first proposition of law is overruled.

## II

{¶ 20} In its second proposition of law, the estate asserts that R.C. 5123.62, 5126.05, 5126.41, and 5126.431, combined with the Enforcement Clause of the Fourteenth Amendment to the United States Constitution, expressly impose liability within the meaning of R.C. 2744.02(B)(5), and, therefore, the board is not immune from liability. Without regard to immunity, the appellate court held that the estate failed to plead sufficient facts to state a viable claim for negligence based upon the duties imposed by R.C. 5123.62 and 5126.431. *Ridley,* supra, 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034, at ¶ 19. However, for the purposes of addressing this proposition of law, we will assume that the estate sufficiently pled these claims.

{¶ 21} The estate concedes that the board is a political subdivision entitled to the general grant of immunity in R.C. 2744.02(A)(1) subject to the exceptions set forth in R.C. 2744.02(B). As relevant here, former R.C. 2744.02(B)(5) as amended by Am.Sub.H.B. 215, effective June 30, 1997, provided:

{¶ 22} "[A] political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term 'shall' in a provision pertaining to a political subdivision." 147 Ohio Laws, Part I, 1150.

{¶ 23} In *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, we interpreted an earlier version of R.C. 2744.02(B)(5), which contained the following language: "a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *."[2] We held there that the term "liability"

---

2. {¶ a} *Campbell* was governed by R.C. 2744.02(B)(5) as amended by Am.Sub.S.B. No. 221, 145 Ohio Laws, Part II, 2211, 2215–2217, effective September 28, 1994, which provided:

{¶ b} "In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is

referred to either civil or criminal liability.[3]  Id. at 341, 750 N.E.2d 539.

{¶ 24} Here, the estate concedes that no section of the Revised Code expressly imposes liability for failure to perform the duties in R.C. 5123.62, 5126.05, 5126.41, and 5126.431 and concedes that former R.C. 2744.02(B)(5) prohibits construing liability to exist solely because a statute imposes a responsibility or mandatory duty upon a political subdivision.  The estate nevertheless asserts that the Enforcement Clause of the Fourteenth Amendment satisfies R.C. 2744.02(B)(5).

{¶ 25} Specifically, the estate contends that R.C. 5123.62, 5126.05, 5126.41, and 5126.431 vested Ridley with certain property interests, which merit the protection of due process of law, and that the due process rights within these statutes trigger the Enforcement Clause of the Fourteenth Amendment, which in turn supplies the express imposition of liability required by R.C. 2744.02(B)(5).

{¶ 26} Although the Enforcement Clause of the Fourteenth Amendment gives Congress the "power to enforce, by appropriate legislation, the provisions of this article," an act of Congress is not "a section of the Revised Code" pursuant to R.C. 2744.02(B)(5).  Furthermore, even if we treated it as such, the estate has not pointed to any legislative action taken by the United States Congress pursuant to the Enforcement Clause that would abrogate tort immunity or expressly impose a penalty for violations of the above statutes or the rights contained therein. Accordingly, none of these code sections—R.C. 5123.62, 5126.05, 5126.41, and 5126.431—through the Enforcement Clause of the Fourteenth Amendment expressly imposes liability within the meaning of former R.C. 2744.02(B)(5).

{¶ 27} In this proposition of law, the estate also argues that the appellate court erred by not addressing the merits of its constitutional challenge to R.C. Chapter 2744 and asks us to deem R.C. Chapter 2744 unconstitutional as violative of the right to a remedy, as guaranteed by Section 16, Article I of the Ohio Constitution.

---

expressly imposed upon the political subdivision by a section of the Revised Code * * *. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."

3.  {¶ a} Since *Campbell,* and since this case arose, the General Assembly has amended R.C. 2744.02(B)(5) to permit a political subdivision to be sued under that subdivision only when the liability expressly imposed by a section of the Revised Code is civil liability:

{¶ b} "In addition to the circumstances described in division (B)(1) to (B)(4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *.  Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term 'shall' in a provision pertaining to a political subdivision."  2002 Am.Sub.S.B. No. 106, effective April 9, 2003.

The estate, however, neither raised the constitutionality of R.C. Chapter 2744 as a proposition of law in its memorandum in support of jurisdiction nor developed the constitutional argument in its brief beyond the bare assertion that R.C. Chapter 2744 is unconstitutional as violative of a right to a remedy. Accordingly, we decline to address this issue. See, generally, *In re Timken Mercy Med. Ctr.*, supra, 61 Ohio St.3d at 87, 572 N.E.2d 673.

{¶ 28} The estate's second proposition of law is overruled.

## III

{¶ 29} Based on the foregoing, we overrule the estate's first and second propositions of law and affirm the judgment of the Hamilton County Court of Appeals.

Judgment affirmed.

MOYER, C.J., LUNDBERG STRATTON and O'CONNOR, JJ., concur.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., dissent.

————————

ALICE ROBIE RESNICK, J., dissenting.

{¶ 30} The primary issue in this appeal is whether appellee Hamilton County Board of Mental Retardation and Developmental Disabilities may be held liable under R.C. 5123.61(C) for the failure of its employees, appellees Jerry Clark and Sonjua Day, to report each other's neglect of Jerome Ridley. Specifically, the estate of Jerome Ridley asks whether, for purposes of the immunity exception in former R.C. 2744.02(B)(5), 147 Ohio Laws, Part I, 909, 1150, R.C. 5123.61(C) expressly imposes liability upon a county board of mental retardation and developmental disabilities for failure to report the abuse or neglect of a mentally retarded or developmentally disabled person.

{¶ 31} This issue is easily resolved. In *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 342–343, 750 N.E.2d 539, we held that pursuant to an earlier version of R.C. 2744.02(B)(5), see 1994 Am.Sub.S.B. No. 221, 145 Ohio Laws, Part II, 2211, 2215–2217, which contained the same operative language as the version of R.C. 2744.02(B)(5) now at issue, a board of education may be held liable when one of its employees fails to perform the duty to report known or suspected child abuse in violation of R.C. 2151.421. Since there is no relevant distinction between R.C. 5123.61 and 2151.421 or between their corresponding penalty provisions, and because the situation in this case cannot be distinguished from the situation that

produced our judgment in *Campbell*, the above question must be answered in the affirmative.[4]

{¶ 32} The majority manages, however, to avoid this issue. In addressing the validity of the various claims included within the estate's second proposition of law, the majority is willing to "assume that the estate sufficiently pled these claims." But in addressing the validity of the estate's failure-to-report claim, the majority concludes that "the estate failed to allege sufficient facts to state a prima facie negligence claim under R.C. 5123.61(C)."

{¶ 33} In disposing of the estate's first proposition of law on this alternative ground, the majority reasons:

{¶ 34} "Here, the board itself does not have a duty to report, as it is not a person listed in division (C)(2); however, Clark and Day, as employees of the board, had such a duty. See R.C. 5123.61(C)(2)(c). Although the estate cites R.C. 5123.61 in its complaint, it does not allege that either Clark or Day failed to make a report pursuant to division (C)(1). Even if we were to infer that these employees breached this duty, the estate has not alleged sufficient facts to demonstrate that the failure to report contributed to Ridley's death; rather, the estate alleges that because the board and its employees knew or should have known about Ridley's tendency to overdress in warm weather and confine himself to his apartment with the windows shut, their abandonment of Ridley during an extreme heat wave proximately caused his death."

{¶ 35} The majority's insistence on pinpoint pleading is antithetical to the guiding principle that "[a]ll pleadings shall be so construed as to do substantial justice." Civ.R. 8(F). Indeed, the majority essentially upholds the dismissal of this claim on the very basis that it is pled with "the simplicity and brevity of statement which the[ ] [civil] rules contemplate." Civ.R. 84.

---

4. The board and amicus curiae, County Commissioners' Association of Ohio, make several attempts to distinguish this case from *Campbell*. Their supporting arguments, to a large extent, come to rest on the erroneous assumption that the board and its employees have the same legal identity or persona for purposes of R.C. 5123.61(C). This assumption is most prominent, for example, in amicus curiae's argument that this case differs from *Campbell* because it "deals with [board] employees who have a duty to report suspected abuse or neglect of a retarded individual to themselves. * * * For all intents and purposes, a report was made to [the board] in this case. When the employees knew of the [neglect], it was known by the agency." The assumption is obviously false, however, since R.C. 5123.61(C) expressly requires an "employee of a county board of mental retardation and developmental disabilities" to report such information "to the county board of mental retardation and developmental disabilities." Under amicus's reasoning, moreover, no board employee could ever be accused of failure to report under R.C. 5123.61(C), since the employee's own knowledge of abuse or neglect simultaneously triggers and fulfills the duty to report. In this semantic domain, compliance with the reporting requirements becomes a needless inquiry because the board employee who withholds information concerning abuse or neglect is nevertheless deemed to have imparted that information to the board.

{¶ 36} To begin with, the majority intimates that the estate merely "cites R.C. 5123.61 in its complaint." This, however, is not the case. In paragraph seven of its second amended complaint, the estate specifically alleges that "[u]nder ORC § 5123.61 * * *, [the board] and its employees had the statutory duty to report any neglect or abuse of RIDLEY, as well as a duty to report any unusual circumstances or emergencies affecting RIDLEY'S health, safety, and well being." [5]

{¶ 37} The complaint further alleges that neither Clark nor Day "ever communicated to * * * interested health care authorities or departments that RIDLEY'S Service Assistant (Day) was 'done with him,'" that "the duties owed to RIDLEY by [the board] and its employees" were breached, and that these employees "acted within the scope of their * * * employment in * * * breaching the statutory duty of care they owed to RIDLEY." Moreover, the complaint alleges that "RIDLEY'S death was proximately caused by [the board's] breach of duty" and that, in the alternative, the board's employees "failed to do an act which it was [their] duty to do, knowing or having reason to know of facts which would lead a reasonable man to realize that failure to so act created [a] gross and unreasonable risk of physical harm to RIDLEY."

{¶ 38} These latter allegations (going to the elements of breach of duty and proximate cause), although not specifically directed to the reporting duties in R.C. 5123.61(C), are of sufficient breadth to encompass the totality of duties claimed to be owed throughout the complaint. The majority's analysis, which basically treats these general allegations as being strictly limited to the estate's abandonment claim, is unfair, especially since the complaint contains a separate allegation in which it specifically accuses the board of "proximately causing RIDLEY'S death by abandoning his care."

{¶ 39} Moreover, there is no rule that a complaint must set forth a specific set of facts to support its general allegations of negligence or, in the majority's words, "to demonstrate" proximate cause. Quite the contrary: "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R.12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

---

5. The majority's opening remark that "the board itself does not have a duty to report, as it is not a person listed in division (c)(2)," is insignificant. In *Campbell*, we found that "a political subdivision may be held liable for failure to perform a duty expressly imposed on its employee by R.C. 2151.421." Id., 92 Ohio St.3d at 343, 750 N.E.2d 539.

{¶ 40} Indeed, the syllabus in *O'Brien* expressly follows *Conley v. Gibson* (1957), 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. In *Conley*, the United States Supreme Court explained:

{¶ 41} "The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (Footnotes omitted.) Id. at 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80.

{¶ 42} In reality, the majority never considers the relevant issue under Civ.R. 12(B)(6), which is whether there is any provable set of facts that would entitle the estate to relief under R.C. 5123.61(C). *O'Brien*, supra. However, it is readily conceivable that the estate could "demonstrate that the failure to report contributed to Ridley's death" by showing that an immediate report made by either Clark or Day would have resulted in protective action being taken before Ridley died. Instead, requiring considerably more of the estate's complaint than "a short and plain statement of the claim showing that the party is entitled to relief," Civ.R. 8(A), the majority upholds the dismissal of the estate's failure-to-report claim on grounds that are suspiciously reminiscent of the very obdurate and antiquated "fact pleading" standards that the Civil Rules were designed to replace.

{¶ 43} For all of the foregoing reasons, I must respectfully dissent.

F.E. SWEENEY and PFEIFER, JJ., concur in the foregoing dissenting opinion.

---

Sanders & Associates and Raymond L. Katz; and Robert L. Schwartz, for appellant.

McCaslin, Imbus & McCaslin and Bernard W. Wharton; and David T. Stevenson, Hamilton County Assistant Prosecuting Attorney, for appellees.

Issac, Brant, Ledman & Teetor, L.L.P., and Mark Landes, urging affirmance for amici curiae County Commissioners' Association of Ohio and the Public Children's Services Association of Ohio.

