OPINION
{¶ 1} Plaintiff-appellant, Rodney S. Smith, appeals a decision of the Warren County Court of Common Pleas granting the dismissal motion of defendants-appellees, the village of Waynesville, et al. ("the Village"), in a breach of contract action. For the reasons outlined below, we reverse the decision of the trial court.
 {¶ 2} On October 14, 2002, Smith entered into an employment contract with the Village to serve in the capacity of village manager ("First Agreement"). The First Agreement *Page 2 
created a three-year term of employment, with an option for renewal. At some time during this initial term, the parties negotiated a second employment contract which created a five-year term of employment and became effective on October 14, 2005 ("Second Agreement"). The Second Agreement provided for a severance package to be paid to Smith upon the happening of certain events, including his resignation.
 {¶ 3} On July 14, 2006, nine months into the term covered by the Second Agreement, Smith resigned his position. At that time, he sought severance pay in the amount of $43,025. The Village refused to pay him. On September 11, 2006, Smith filed a claim for breach of contract for the Village's failure to pay him monies due under the Second Agreement. The Village moved to dismiss Smith's complaint pursuant to Civ.R. 12(B)(6). In a decision rendered on March 5, 2007, the trial court granted the Village's dismissal motion. Smith timely appeals, raising one assignment of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF SMITH BY GRANTING THE VILLAGE'S MOTION TO DISMISS."
 {¶ 6} An appellate court reviews a trial court's decision on a motion to dismiss a complaint de novo. Madison Cty. Bd. of Commrs. v.Bell, Madison App. No. CA2005-09-036, 2007-Ohio-1373, ¶ 58. Civ.R. 12(B)(6) authorizes the dismissal of a complaint which fails to state a claim upon which relief can be granted. In order to warrant such a dismissal, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation Developmental Disabilities, 102 Ohio St.3d 230, 2004-Ohio-2629, ¶ 13, quoting O'Brien v. Univ. Comm. Tenants Union, Inc. (1975),42 Ohio St.2d 242, syllabus.
 {¶ 7} The trial court granted the Village's motion to dismiss the complaint on the basis that the employment contract was never certified by the Village's fiscal officer, as *Page 3 
required by R.C. 5705.41(D)(1). In pertinent part, this provision of the Revised Code prohibits a political subdivision from:
 {¶ 8} "[Making] any contract or giv[ing] any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation * * * has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances."
 {¶ 9} Pursuant to the explicit language of this provision, contracts subject to the statute that are not certified are void. R.C.5705.41(D)(1). See, also, Bower v. Village of Mt. Sterling (Apr. 24, 2000), Madison App. No. CA99-10-025, at 8. The statute goes on to specify that the word "contract," as used therein, "excludes current payrolls of regular employees and officers." R.C. 5705.41(D)(3). The trial court found that this exception applies to specific line item appropriations, presumably one of which is current payroll. Finding Smith's severance pay amounted to a speculative future payment, the trial court concluded that the Second Agreement fell under the R.C.5705.41(D)(1) certification requirement and was void for want of certification.
 {¶ 10} To the contrary, Smith argues that R.C. 5705.41(D)(1) does not apply to employment contracts entered into between municipal corporations and their employees. Such contracts, urges Smith, are exempt from the certification requirement pursuant to the language contained in R.C. 5705.41(D)(3) (current payrolls of regular employees and officers are excluded from the certification requirement).
 {¶ 11} We must determine whether the Second Agreement was subject to or exempt from the certification requirement. There can be little dispute that Smith was a "regular employee or officer" of the Village. He was paid a salary and was appointed to the position of village manager for a definite and continuous term. Cf. Allen v. Sheipline
(1934), *Page 4 49 Ohio App. 249, 259-60. Rather than assignment to a single project, Smith was assigned specific and ongoing duties which were set forth in the village charter. See id. Because Smith was a regular employee or officer of the village, the case turns upon whether Smith's compensation under the Second Agreement, including severance pay, was a "current payroll of a regular employee or officer," thus exempting the contract from the certification requirement.
 {¶ 12} In City of Youngstown v. First Natl. Bank of Youngstown (1922),106 Ohio St. 563, the Ohio Supreme Court addressed a bank's action against the city of Youngstown to recover certain sums advanced to the city for payment of emergency patrolmen appointed by the mayor. The case involved construction of General Code section 3806,[1] called the Burns Law, a predecessor of R.C. 5705.41(D). The Burns Law, like R.C.5705.41(D), required that a municipal auditor or clerk certify any contract calling for the expenditure of public funds. In considering the case, the supreme court held the following:
 {¶ 13} "The Burns Law, in our judgment, is one of the most wholesome laws of a restrictive nature ever put upon the statute books, and its spirit and letter should be scrupulously respected and followed. Clearly, however, it was designed to apply to the usual, ordinary, and everyday transactions between the public and the city, through its officers. In its strict, literal interpretation, it would clearly comprehend the election of a public officer, which now involves the obligation to pay the salary of such officer upon his official service, for which the money may or may not be in the treasury, unappropriated. But we never heard it claimed that the statute was ever intended to cover any such obligation as that arising from an official salary."Youngstown at 571-72. *Page 5 
 {¶ 14} The court concluded that the Burns Law did not apply to the payment of the patrolmen. Id. at 572-73. This reasoning was reinforced in Village of Mayfield Heights v. Irish (1934), 128 Ohio St. 329. InIrish, a municipal engineer brought suit to recover payment for engineering services rendered to the village. For "special improvements," the engineer's compensation had been set at a percentage of the cost of the improvements, rather than a fixed amount. Addressing the applicability of General Code section 5625-33(d),[2] a successor of the Burns Law and another predecessor of R.C. 5705.41(D), the supreme court determined:
 {¶ 15} "Incorporated in section 5625-33 (112 Ohio Laws, 406), is the express statement that `the term "contract" as used in this section, shall be construed as exclusive of current payrolls of regular employees and officers.' It is clear, therefore, that if the employment of [the engineer] had been wholly upon a salary basis of a fixed and definite amount, there could be no doubt of his right to maintain an action to recover salary due for services rendered, regardless of section 5625-33." Irish at 333.
 {¶ 16} Based upon the holdings in Youngstown and Irish, we find that the employment contracts between Smith and the Village were not subject to the certification requirement of R.C. 5705.41(D)(1) and that the trial court misapplied the statute to the facts of the case. The statute requires certification for contracts involving usual, ordinary, and everyday transactions between the public and the city.Youngstown at 571. It does not apply to employment contracts between a political subdivision and its regular officers and employees. See id. *Page 6 
 {¶ 17} The trial court narrowly applied the R.C. 5705.41(D)(3) exception in determining that Smith's severance pay was a speculative future payment. Finding that this speculative payment was "something more than current payroll," the court concluded that the severance pay was subject to the statutory requirement certifying that there were funds in the village treasury to pay the severance package. We disagree with the trial court's reasoning.
 {¶ 18} First, there was nothing speculative about the severance pay. The formula for its computation was explicitly set out in Section 4 of the Second Agreement:
 {¶ 19} "In the event Employer or Employee chooses to terminate this agreement, Employer hereby agrees to pay Employee a lump sum cash payment equal to six (6) months aggregate base salary, plus one (1) months aggregate base salary for each year Employee has been employed by Employer, not to exceed twelve (12) months[.] * * * The severance package set forth herein shall become due immediately upon departure from the Village of Waynesville's employment for any reason, unless as set forth herein, Employee leaves to accept other employment."
 {¶ 20} Clearly, Smith's severance pay was a definite and discernable sum. The only variable was the addition of one month of pay for every year Smith was employed. This additional amount, however, was capped at 12 months. As a result, the maximum amount of severance pay that Smith could have received was readily ascertainable.
 {¶ 21} Second, the trial court rigidly construed the word "current" in the R.C. 5705.41(D)(3) exception. Under the trial court's view, compensation for any newly-hired employee of a political subdivision would be speculative, future pay. Unless an employee is paid his or her entire salary in advance, every employment contract involves an element of prospectivity regarding compensation. Any benefits not immediately received could succumb to the trial court's narrow reasoning. Rather than afford R.C. 5705.41(D)(1) such undue reach, we adopt the analysis in Lee v. Brewster Village Sch. Dist. (C.P.1932), 29 Ohio N.P. *Page 7 
(N.S.) 134, 1932 WL 1909:
 {¶ 22} "`Current' in its narrow sense means, of course, salary for the running month, or year, as the case may be. However, in its broader sense, it means any salary which runs as an incident or perquisite of the position or office held. Section 5625-33 constitutes a severe check upon the general powers of public authorities, and consequently under the familiar rule of construction, that in case of ambiguity statutes must be construed against those claiming benefit thereby; when its terms are invoked to cloak the actions of a public board with a financial immunity which it could not otherwise obtain, any doubt must be resolved in favor of the other contracting party, and hence `current' must be construed in its broader sense, and the plaintiff's contract does come within the terms of the exception." Id. at *4.
 {¶ 23} Thus, the word "current" in R.C. 5705.41(D)(3) should be broadly construed to encompass Smith's severance pay. In accordance with the Second Agreement, this pay was promised to Smith by the Village and became an incident or perquisite of the village manager position. The record does not indicate that Smith failed to perform in any way under the Second Agreement. On the day he resigned, Smith had performed all of his contractual duties and was entitled to all compensation, including severance pay, owing under the Second Agreement.
 {¶ 24} Due to the exclusion of the Second Agreement from the certification requirement, we cannot bifurcate the agreement and subject only the severance pay portion to the certification requirement. The entire agreement is exempt from R.C. 5705.41(D)(1). As a result, the trial court erred in declaring the Second Agreement void and Smith is entitled to all payment owing under the Second Agreement, including severance pay.
 {¶ 25} Smith's first assignment of error is sustained.
 {¶ 26} Judgment reversed. The matter is remanded to the trial court for further proceedings according to law and consistent with this decision. *Page 8 
YOUNG, P.J. and WALSH, J., concur.
[1] General Code section 3806 provided, in pertinent part: "No contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the expenditure of money, be passed by the council or by any board or officer of a municipal corporation, unless the auditor or clerk thereof, first certifies to council or to the proper board, as the case may be, that the money required for such contract, agreement or other obligation, or to pay such appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose * * * ."
[2] General Code section 5625-33(d) provided, in pertinent part: "[No subdivision or taxing unit shall] [m]ake any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same * * * has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. Every such contract made without such certificate shall be void * * *. The term `contract' as used in this section, shall be construed as exclusive of current payrolls of regular employees and officers." *Page 1