{¶ 83} I respectfully dissent.
 {¶ 84} First, the procedural posture in this case reveals a disturbing delay by the Spanglers from the time the board filed the initial request to the time they voiced any objection of record. The board filed a request to remove Mr. and Mrs. Spangler as guardians on October 25, 2006. A hearing was set for October 31, 2006. At that hearing, the parties, including Mr. and Mrs. Spangler, entered into an agreement allowing APSI to serve as John's temporary guardian. A hearing was set for April 24, 2007. The Spanglers filed a request to dismiss the board's motion because of lack of standing on April 20, 2007, almost six full months after the board had originally brought this issue to the attention of the court. However, even if that motion had been summarily granted, the status of the case would have been placement of John with APSI under the October 31, 2006 agreed entry. Nevertheless, a hearing commenced *Page 19 
on April 24, 2007. The following day, the trial court added the board as a party to the case. Two additional days of hearings occurred, on June 13, 2007 and July 24, 2007, before the trial court reached its conclusion that it would be in the best interest of John Spangler to remain under the guardianship of APSI.
 {¶ 85} Second, I disagree with the way the lead opinion has framed the issue in this case. I do not believe focusing on what "powers" have been conferred to county boards of mental retardation and developmental disabilities is the proper inquiry. Rather, I believe the simple question in this case is whether the board had the "right" or "ability" to request the probate court to take action in the best interest of the ward.
 {¶ 86} "A county board of mental retardation and developmental disabilities exists to serve the needs of the mentally retarded and developmentally disabled residents of a given county. The board has a duty to set up an individual plan for each resident, to provide services to the resident, and to ensure that those services are being carried out." Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation Developmental Disabilities, 150 Ohio App.3d 383, 2002-Ohio-6344, at ¶ 15.
 {¶ 87} R.C. 2111.13(C) permits an "interested party" to file objections to a guardian's actions. I believe the general duties of the board are sufficient to deem the board an "interested party" and object to the guardian with the probate court.
 {¶ 88} The majority holds that the board's authority and "power" is limited to the complaint procedure set forth in R.C. 5126.33. The lead opinion states that it believes the detailed procedure in R.C. 5126.33
is evidence that the "General Assembly has effectively banned such boards from seeking the removal of a guardian * * *." I agree with the amicus brief that the procedure set forth in R.C. 5126.33 is not the board's *Page 20 
exclusive remedy. In fact, that section clearly establishes that the type of complaint contemplated by that statute does not apply to this situation. It only applies when the board is seeking protective services for the adult. R.C. 5126.33(D)(1) sets forth what the trial court must find in order to issue an order for protective services:
 {¶ 89} "The court shall issue an order authorizing the board to arrange the protective services if it finds, on the basis of clear and convincing evidence, all of the following:
 {¶ 90} "(a) The adult has been abused, neglected, or exploited;
 {¶ 91} "(b) The adult is incapacitated;
 {¶ 92} "(c) There is a substantial risk to the adult of immediate physical harm or death;
 {¶ 93} "(d) The adult is in need of the services;
 {¶ 94} "(e) No person authorized by law or court order to give consent for the adult is available or willing to consent to the services."
 {¶ 95} In this case, the board felt the guardians were not fulfilling their duty and it would be in the best interest of the ward to have them removed. There was no allegation that there was an "immediate risk of physical harm or death." Therefore, a R.C. 5126.33 complaint would not be appropriate. However, I believe it is inappropriate to suggest the board is without remedy if it feels the guardian is not doing his or her job and that the best interest of the ward would be served if a new guardian is appointed.
 {¶ 96} Anyone can ask the probate court to address problems with a guardian. Thus, it is difficult to believe that the Legislature intended to ban the very board created *Page 21 
to look after the best interests of persons with mental retardation or developmental disabilities from performing this action.
 {¶ 97} At oral argument, the Spanglers' counsel acknowledged thatanyone can write to the probate court, as the superior guardian of the ward pursuant to R.C. 2111.50(A)(1), and request anything with regard to the guardianship. Thereafter, the probate court has the discretion to grant or deny the request, or set the matter for a hearing. Further, counsel agreed that the board could have sent a letter to the probate court with the same information contained in its motion and the end result would have been the same. By adopting the majority rule, we are telling the probate court, with wide and plenary powers over guardianship matters, to whom it can and cannot listen. As the trial court noted, R.C. 5126.15 imposes obligations and duties upon the board. These duties are owed to John Spangler, not his parents.
 {¶ 98} Finally, I believe the majority needs to provide further guidance for the trial court upon remand. The majority has remanded the matter for further proceedings but has not expressly indicated to the trial court what actions would be appropriate. After a lengthy and thorough set of hearings, the trial court made a finding that "neither Gabriele nor Joseph Spangler are suitable to serve as John Spangler's guardian." What is the probate court supposed to do now? Return John to his parents' control-just because the majority does not feel it was appropriate for the board to bring John's plight to the attention of the court?
 {¶ 99} I would give great deference to the trial court after its exhaustive efforts to determine what is in John's best interest, and, thus, I would affirm the trial court's order. *Page 1